[Civ. No. 1929.   Third Appellate District.—April 3, 1919.]

## BLANCHE BARTON BRODERICK, Appellant, v. L. A. BRODERICK, Respondent.

[1] DIVORCE—ADULTERY—FINDINGS—EVIDENCE—APPEAL.—Even though it be conceded that the trial court, in an action for divorce on the ground of adultery, should base its findings of guilt only upon evidence convincing to a moral certainty and beyond a reasonable doubt, it would still be the duty of the appellate court to give at least the same weight to the findings of the trial court as it does to the verdict of a jury in a criminal case.

[2] ID.—PROVINCE OF TRIAL JUDGE.—The acts and conduct constituting adultery are of such a nature that an intelligent, observing, and experienced trial judge making full use of his opportunities to observe the conduct, temperament, manner, and appearance of the witnesses before him is in the nature of things more capable of reaching a just conclusion from the evidence than a court of review, even with the assistance of able and zealous counsel.

[3] ID.—FALSE CHARGE OF ADULTERY IN FORMER ACTION — CRUELTY—CONDONATION—SUBSEQUENT MISCONDUCT.—In such action, a false charge of adultery made in a former action which is set up as a ground of cruelty is not to be considered as stale, although the parties had subsequent to such former action lived together as husband and wife, where there was subsequent misconduct which caused, and was calculated to cause, great mental suffering.

[4] ID.—CHARGE OF INFIDELITY — RELATIONS WITH OTHERS — ADMISSIBILITY OF LETTER.—Where, in such action, the plaintiff alleged that the defendant had falsely accused her of infidelity and immorality, the court properly admitted in evidence letters written by the plaintiff to a person other than her husband which contained language that indicated that her relations with such person were of such a character as to leave her no cause for rightful complaint as to her husband's charge against her of infidelity.

[5] ID.—CONDUCT OF PLAINTIFF—TESTIMONY OF EYE-WITNESSES.—In such action, testimony of other persons that on different occasions they had seen the plaintiff lying on the same bed with the person to whom such letter had been written was likewise relevant and pertinent, tending to contradict the allegations of her complaint.

[6] ID.—CHARGE OF FAILURE TO PROVIDE—REQUESTS FOR MONEY—ADMISSIBILITY OF LETTERS.—Where, in such case, the plaintiff charged the defendant with willfully failing to provide, on cross-examination of the plaintiff the court properly permitted the introduction in evi-

dence of a letter written by her to the defendant containing a request for money and which, in substance and tenor, tended to show the actual relations between the parties as regards money matters.

[7] EVIDENCE — CROSS-EXAMINATION — TESTIMONY ADMISSIBLE.—Rules of evidence are primarily rules of exclusion, and in this state the rule has never been so applied as to relieve a party when under cross-examination from his sworn obligation to tell the whole truth when it might in any degree tend to explain, qualify, or shed light on any relevant testimony given by him on direct examination.

[8] ID.—REPUTATION IN PLACE OF FORMER RESIDENCE—ADMISSIBILITY. It is a question for the court to determine whether or not general reputation in a place of former residence is too remote in point of time to be allowed in evidence.

[9] ID.—REPUTATION.—Where, in an action for divorce on the ground of adultery, it appears that the witnesses have never discussed the reputation of the plaintiff "except in the family," their testimony might properly be stricken out on motion, if such motion be made.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. A. Blanchard and H. Scott Jacobs for Appellant.

John G. Covert and John F. Pryor for Respondent.

BUCK, P. J., pro tem.—In September of 1915 appellant brought suit for separate maintenance of herself and minor daughter, alleging as the grounds of action failure to provide and extreme cruelty. In November of the same year she brought suit for divorce and custody of the minor children and all the community property upon the same ground. On motion of respondent these two causes of action were transferred from the county of Santa Clara to the county of Kings, and he answered in each action denying the allegations of cruelty and failure to provide. He also filed cross-complaints in each action, alleging extreme cruelty and adultery and praying for a judgment of divorce. These actions were by stipulation tried together on March 14, 1916; findings were made that it was not true that respondent was guilty of extreme cruelty or failure to provide; but the court did find

that appellant was guilty of extreme cruelty and of adultery. Pursuant to these findings, respondent was granted an interlocutory decree of divorce awarding him the custody of the minor son Lloyd and all of the community property except two thousand dollars. Appellant was awarded the custody of the minor daughter and the sum of two thousand dollars, to be paid in monthly sums of $50 after entry of judgment until the entire award was paid. In the maintenance action the court denied appellant any relief. A motion for a new trial was made by appellant, which was denied, and appellant appealed from the order denying her motion for a new trial and also from the judgment and order entered in each of the actions. By stipulation the appeals in said actions will be heard and determined together upon the same transcript and briefs.

It is stated in appellant's brief that "the paramount issue on appeal is as to the sufficiency of the evidence to support the findings as to adultery." The evidence is fully set forth in the bill of exceptions and has been carefully read and considered by the court in the light of counsel's able and earnest brief. No useful or proper purpose can be served by reproducing this evidence in this record. If the trial court believed, as it had a right to, the testimony of the witnesses Meyers, Mr. and Mrs. Martin, Mrs. Davis, Hiram Barton, and the respondent, and distrusted, as it had a right to do, the testimony of the appellant and her co-respondent Gatlin, there was an ample basis of sufficient proof to establish the court's findings not only of adultery but also of extreme cruelty. While learned counsel vigorously attacks the veracity and character of some of respondent's witnesses, even to the extent of going outside of the record, he does not gainsay the potency of the damaging facts to which they testify. [1] And even though it be conceded that the trial court in an action charging adultery should base its findings of guilt only upon evidence convincing to a moral certainty and beyond a reasonable doubt, it would still be the duty of this court to give at least the same weight to the findings of the trial court as it does to the verdict of a jury in a criminal case. As stated by Justice Henshaw in the case of *People* v. *Durrant,* 116 Cal. 200, [48 Pac. 79]: "Upon a review of the evidence by this tribunal we may not examine with minute-

ness claims that witnesses are discredited or that their testimony is unworthy of belief or look to see whether some other conclusion might not have been warranted by the evidence." Also our supreme court in the case of *Robinson* v. *Robinson,* 159 Cal. 203, [113 Pac. 155], which like the case at bar was a suit for divorce: "We are bound by the well-established rule that the decision of the trial court upon issues of fact is conclusive upon us in so far as there is any substantial evidence tending fairly to support such decision, even though we may think that a different conclusion should have been arrived at. . . . The trial court was the exclusive judge of all questions of the credibility of witnesses and weight of testimony, and must be assumed to have considered all the evidence given in the light of such rules as are laid down by the law for the guidance of the court and jury in the determination of questions of fact. It should further be borne in mind that the question whether acts and conduct constitute such cruelty, as, under all the circumstances shown, warrants the granting of a divorce, is of such a nature that the conclusion of the trial court is necessarily entitled to great weight, and it is only where it is clear that it is without any substantial support in the evidence that it will be disturbed on appeal."
[2]    And to a much greater extent is it true that "the acts and conduct" constituting adultery are "of such a nature" that an intelligent, observing, and experienced trial judge making full use of his opportunities to observe the conduct, temperament, manner, and appearance of the witnesses before him is in the nature of things more capable of reaching a just conclusion from the evidence than a court of review even with the assistance of able and zealous counsel. (9 R. C. L., sec. 106; *Ellett* v. *Ellett,* 157 N. C. 161, [Ann. Cas. 1913B, 1215, 39 L. R. A. (N. S.) 1135, 72 S. E. 861]; *Thayer* v. *Thayer,* 101 Mass. 111, [100 Am. Dec. 110]; *Cooke* v. *Cooke,* 152 Ill 286, [38 N. E. 1027].)    And, therefore, as stated by Chief Justice Angellotti in the Robinson case above cited: "We feel that no useful purpose would be subserved by discussion of the evidence given upon matters embraced in the findings that are attacked by learned counsel in his brief as being without support."
The only contention counsel in his brief makes in regard to the finding of cruelty is that "the charges of cruelty are

not supported by any testimony whatever other than that
of the husband and wife, which is insufficient (Civ. Code, sec.
130). Appellant makes proper explanations as to every
charge of cruelty.''

The acts constituting cruelty as charged in respondent's
cross-complaint and found by the court are that on or about
July 2, 1913, the appellant filed her complaint in the county
of Glenn, falsely charging that respondent committed adul-
tery with a woman in Los Angeles on April 23, 1913, and
praying for a divorce and a division of the property; that
she reiterated these false charges in letters to members of her
family which were communicated to co-respondent; that in
the spring of 1913 she permitted another man, over the objec-
tion of her husband, to occupy one of her rooms as a night
lodger; that in July of 1914 she forbade respondent to call
her ''wife.'' And as additional acts of cruelty, causing him
great mental anguish, respondent charges appellant with some
of the same improper conduct with co-respondent Gatlin that
he had alleged in his cause of action charging adultery.

As regards the suit commenced by appellant in Glenn
County falsely charging respondent with adultery, respond-
ent's testimony in regard to the commencement and dismissal
of this action and the charges therein is corroborated by the
records of the county of Glenn showing the complaint with
signature of respondent's attorney with the seal and jurat of
the notary public to appellant's verification of the complaint;
also a telegram of appellant's attorney authorizing the dis-
missal of her action. No objection to this evidence was offered
except that it ''was barred by sections 124, 125, 126 of the
Civil Code.'' There is also corroborating evidence that at the
time of this action appellant was a resident of Kings County
and went to Los Angeles not of his own motion or purpose
but at the solicitation of his wife to come in pursuance of a
telegram received by him from a stranger in Los Angeles by
the name of Davis. This telegram was received in evidence
without objection and corroborates the purpose and good
faith of appellant's visit to Los Angeles. In the case at bar
the record conclusively absolves the parties of any desire or
purpose to obtain a divorce by collusion. The record conclu-
sively shows that each party is attempting to obtain for him-
self or herself and prevent the other from obtaining a decree

upon the grounds of cruelty or adultery. A bitter conflict as to property interests and the custody of the children, as well as the evident feelings of the parties, leave the case absolutely devoid of any suspicion of collusion. Consequently, in this case at least, the reason of the rule requiring corroboration is much modified and a lesser degree and quantity of corroboration will be exacted. (*Blanchard* v. *Blanchard,* 10 Cal. App. 203, [101 Pac. 536] ; *MacDonald* v. *MacDonald,* 155 Cal. 665, [25 L. R. A. (N. S.) 45, 102 Pac. 927].)

[3] Counsel contends that the complaint is stale as regards the alleged false charges of adultery in the Glenn County suit. A similar contention was made in the recent case of *Neeley* v. *Neeley,* 179 Cal. 232, [176 Pac. 163], but in that case our supreme court held as follows, in language which is quite applicable to the case at bar: ''We should hesitate to say that an unexplained delay of three and a half years must, as a matter of law, be deemed unreasonable. But that is not the question here. The plaintiff's failure to proceed earlier is fully accounted for by the dismissal of the prior action, and the conduct of the parties thereafter. (Civ. Code, sec. 125.) The plaintiff condoned the offenses of 1911, but under the agreement, as well as by the terms of the law itself (Civ. Code, sec. 117), the condonation carried with it the condition subsequent that the plaintiff should be treated with conjugal kindness. This condition was broken by the defendant in 1915, and the original cause of action thereby revived. (Civ. Code, sec. 121.)'' In the case at bar it is true that respondent lived with appellant as his wife up to August 5, 1915. But under the law this conditional condonation was revoked by the subsequent misconduct of the appellant with Gatlin, which caused, and was calculated to cause, respondent great mental suffering and of which he did not have knowledge until September 21 of 1915.

The appellant assigns as prejudicial error the overruling of her objection to the testimony pertaining to her relations with one John Hanford.

[4] This testimony was properly admitted because it was in direct response to and explanatory of issues raised by respondent herself in her complaint and in her own testimony. In her complaint filed in this action plaintiff charges that defendant ''willfully inflicted upon her great and grievous

mental suffering and anguish . . . ," and that some of said acts of cruelty are ". . . that on numerous occasions within the past ten years, the exact dates of which plaintiff is now unable to specify, the said defendant, without any cause or reason or provocation and wrongfully and falsely accused the plaintiff of infidelity and immorality." Presumably to substantiate this charge in her direct testimony she states that "about the 27th of May, about ten years ago, he [respondent] accused me of adultery with John Hanford. . . . All of these charges that my husband made against me were not true. On June 20, 1915, at our home my husband admitted to me that they were not true. He said to me, 'I know you to be the purest woman that ever lived.' " In view of the foregoing it is evident that it was not error for the court to admit in evidence appellant's letter of August 31, 1904, to John Hanford, which contained language that indicated that her relations with Hanford were of such a character as to leave her no cause for rightful complaint as to respondent's charges against her of infidelity. [5] Likewise the testimony of her uncle Hiram Barton and J. E. Gruwell that on different occasions in 1904 they had seen her lying on the same bed with John Hanford was relevant and pertinent testimony, tending to contradict the allegations of her complaint and the *prima facie* inferences to be drawn from her testimony that she had rightly suffered great mental and grievous anguish when respondent charged her, as she claims he did charge her, with adultery with John Hanford.

Learned counsel for appellant vigorously contends that the trial court erred in overruling appellant's objection to the introduction in evidence as a part of appellant's cross-examination of a letter written by her to the respondent in March of 1915, which contained, among other things, a request from appellant that he send her some money for hospital treatment in connection with a proposed abortion as well as money for other purposes.

The trial court evidently allowed this letter in evidence on cross-examination just as it allowed the above matters in regard to John Hanford, not for the purpose solely of proving respondent's case, but as evidence tending to explain and qualify general testimony given by appellant herself in direct examination in support of charges made by her in her own

complaint against respondent. And in doing this we do not believe that the trial court erred or in any way abused the broad discretion with which the trial court is intrusted upon the cross-examination of a witness who is a party to the action. In her complaint in narrating one of the particulars in which defendant "had wrongfully and willfully inflicted upon her great and grievous mental suffering and anguish," she charges: "Defendant has willfully failed, neglected and refused to provide plaintiff with sufficient food, shelter or medical attention or sufficient means with which to furnish the same though able so to do; and had during the greater portion of said time compelled the plaintiff to live upon the charity of her friends and relatives and thereby causing and still causes plaintiff grievous humility and grievous mental suffering." For the purpose of substantiating these material charges appellant in her direct testimony testified as follows: "Since 1912 the defendant had not furnished anything for the children and I to live on. I have during that time supported myself and the children by my profession as an osteopathic physician. I have been practicing that since August, 1912. He has not paid our grocery bills, rent bills, and has not hardly paid any of the bills in general. I asked him repeatedly for money and he has refused it. . . . These acts of my husband which I have spoken of have humiliated me."

[6] Upon cross-examination she testified as follows: "In 1915 while in Los Angeles, I wrote home several times and asked for money. Q. Now, you say that you wrote to your husband and requested that he send you money when you were in Los Angeles in 1915; is that a fact? A. Yes, sir; I wrote him several times and asked for money. Q. In one of these letters didn't you write to him for money for the specific purpose of procuring an abortion? Mr. Biaggi: I object to that as not proper cross-examination. A. No, sir, I did not. . . . I wrote the letter which you are showing me, inclosed it in an envelope, placed a postage stamp thereon, addressed it to my husband and deposited it in a mail-box in the city of Los Angeles." The letter was then received in evidence, subject to the same objection, ruling, and exception, and, among other matters, stated: "Dear Ardy: Well, I am getting over the effects of my fall but I can never get over the

effects of my visit to the ranch. I am surely pregnant . . . so I am going to be operated on next week and you will have to send me some money . . . I am expecting a check from you to-morrow for those things at Bakersfield . . . now you must send me the money at once, I am sick about it. . . . I will have to have money enough to buy some gowns. I only have two and they are both rags, and to pay for operation and hospital fees . . . '' Whatever else may have been the effect of this letter, in substance and tenor it surely tended to show the actual relations between the parties as regards money matters in 1915. It tended to show that at that time, at least, appellant was asking for money, not as one who was not accustomed to receive it, but was asking for it with the calm and firm assurance of the ordinary housewife, and to that extent the letter serves to explain, modify, and qualify her damaging and general testimony in direct examination that ''since 1912 the defendant has not furnished anything for the children and I to live on. He has not hardly paid any of the bills in general. I asked him repeatedly for money and he has refused.'' Also, in connection with this letter respondent introduced in evidence a large number of checks which he had sent to appellant in 1915 and at other times.

[7] Learned counsel for appellant have cited and quoted liberally from numerous well-established authorities. But the strongest of these go only to the extent of holding that testimony on cross-examination, however discrediting, is inadmissible only when it is entirely foreign to the case and in no way germane to the matters brought out on direct examination and is offered for the sole purpose and with the sole effect of discrediting the witness or the party to the action. (See *Sharon* v. *Sharon,* 79 Cal. 632, at page 674, [22 Pac. 26, 131]; *Estate of James,* 124 Cal. 653, [57 Pac. 578, 1008], and cases cited; *Short* v. *Frink,* 151 Cal. 83, [90 Pac. 200]; *People* v. *Schmitz,* 7 Cal. App. 330, 357, 360, 364, [15 L. R. A. (N. S.) 717, 94 Pac. 407].) But rules of evidence are primarily rules of exclusion. And in this state from the beginning (*Jackson* v. *Feather River Water Co.,* 14 Cal. 19). the rule has never been so applied even in criminal cases as to relieve a party when under cross-examination from his sworn obligation to tell the whole truth when it might in any degree tend to explain, qualify, or shed light on any relevant testimony given by him on his own direct examination. As

stated by our supreme court in the case of *People* v. *Gallagher,* 100 Cal. 466, at page 475, [35 Pac. 80]: "Any question which would have the tendency to elicit from him the whole truth about any matter upon which he had been examined in chief, or which would explain, or qualify, or destroy the force of his direct testimony, whether it be to give the whole of a conversation or transaction of which he had given only a part, or to show by his own admissions that he had made contrary statements, or that his conduct had been inconsistent with the statements given in his direct testimony, and thus throw discredit upon them, would be legitimate cross-examination." The rule applied in the case at bar is illustrated in the case of *Davis* v. *Coblens,* 174 U. S. 719, at page 726, [43 L. Ed. 1147, 19 Sup. Ct. Rep. 832, see, also, Rose's U. S. Notes]): "Walter was called as a witness by plaintiff; testified that such reconveyance was the only one he had made of lot 10— the lot in controversy. Thereupon defendant's counsel cross-examined him at great length against the objection of plaintiffs, regarding his business of buying and selling real estate and the extent of it and character. The ruling of the court permitting the cross-examination is assigned as error. We see no error in it. The question of plaintiff's counsel was a general one, and opened many things to particular inquiry. The extent and manner of that inquiry was necessarily within the discretion of the court, even though it extended to matters not connected with the examination in chief. In *Rea* v. *Missouri,* 17 Wall. 532, [21 L. Ed. 707, see, also, Rose's U. S. Notes], it was said: 'Where the cross-examination is directed to matters not inquired about in the principal examination, its course and extent are very largely subject to the control of the court in the exercise of a sound discretion; and the exercise of that discretion is not reviewable on a writ of error.' "

And the following cases from the federal jurisdiction further illustrate the extent to which the federal courts, in response to the demands of a progressive jurisprudence, are applying a rule conducive to the practical and effective administration of justice: *Commercial State Bank* v. *Moore,* 227 Fed. 19, [141 C. C. A. 573]; *Le More* v. *United States,* 253 Fed. 887, at page 896; *Diggs* v. *United States,* 242 U. S. 470, [L. R. A. 1917F, 502, 61 L. Ed. 442, 37 Sup. Ct. Rep. 192, see, also, Rose's U. S. Notes]. See, also, *State* v. *Carter,* 21

N. M. 166, [153 Pac. 270, at page 272]; *People* v. *Soeder,* 150
Cal. 12, [87 Pac. 1016]; *Graham* v. *Larimer,* 83 Cal. 173, at
page 180, [23 Pac. 286]; *People* v. *Burke,* 18 Cal. App. 72,
at page 78, [122 Pac. 535]; *People* v. *Davenport,* 13 Cal. App.
632, [110 Pac. 318]; *People* v. *Rozelle,* 78 Cal. 84, at page 91,
[20 Pac. 36].

[8] Counsel also contends "that the court erred in per-
mitting Mrs. Gruwell and Mrs. Rice to testify as to the gen-
eral reputation of appellant in Kings County." It is true,
as stated by counsel, that appellant "at the time of the trial
and for more than three months prior to the commencement
of the divorce action had been a resident of Santa Clara
County." But the evidence also shows that prior to that and
for many years she and her family had, for the greater part
of her life, lived in the county of Kings. And, as stated in
*People* v. *Cord,* 157 Cal. 562, [108 Pac. 511]: "It is a ques-
tion for the court to determine whether or not general reputa-
tion in a place of former residence is too remote in point of
time to be allowed in evidence." [9] However, when it
seemed to appear upon cross-examination that the witnesses
had never discussed her reputation "except in the family,"
it might have been proper for the court, upon motion being
made, to have stricken out the testimony of the witness. But
no such motion was made.

The order denying the motion for a new trial and the judg-
ments in each action are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on June 2, 1919, and the following opinion
then rendered thereon:

THE COURT.—We do not regard as material to the deci-
sion the portion of the opinion reading as follows: "Conse-
quently, in this case at least, the reason of the rule requiring
corroboration is much modified and a lesser degree and quan-
tity of corroboration will be exacted (*Blanchard* v. *Blan-
chard,* 10 Cal. App. 203, [101 Pac. 536]; *MacDonald* v. *Mac-
Donald,* 155 Cal. 665, [25 L. R. A. (N. S.) 45, 102 Pac.
927]),—and express no opinion thereon.

The application for a hearing in this court, after decision in the district court of appeal of the third appellate district, is denied.

All the Justices concurred.