[Civil No. 1897.  Filed January 4, 1922.]

[202 Pac. 809.]

## MARGARETTE H. LUNDY, Appellant, v. JOHN C. LUNDY, Appellee.

1. DIVORCE—ADMISSIONS OF A PARTY ARE NOT RENDERED INCOMPETENT
   BY FACT THAT THEY ARE NOT CORROBORATIVE.—Admissions by a
   party to a divorce suit are not rendered incompetent evidence by
   the fact that they are not corroborative of the testimony of the
   other party under Civil Code of 1913, paragraph 3861.

2. DIVORCE—CORROBORATION OF PARTY MAY BE BY TESTIMONY OR AD-
   MISSIONS OF OTHER PARTY—"OTHER EVIDENCE."—Under Civil Code
   of 1913, paragraph 3861, permitting either party to be a witness in
   suit for divorce, but providing that it shall not be granted on testi-
   mony or admissions of a party unless corroborated by "other evi-
   dence," the phrase "other evidence" does not mean evidence aside
   from that of the husband or wife, but means other evidence than
   the testimony or admissions of the party testifying or admitting

some material fact, any competent evidence testified to by any witness qualified to testify, whether direct or circumstantial; evidence from another source, but not necessarily of a different kind or quality, so that the corroboration required could be by the testimony or admissions of the adversary spouse.

3. DIVORCE—RULE REQUIRING CORROBORATION RELAXED WHERE NO COLLUSION EXISTS.—The reason of the rule expressed in Civil Code of 1913, paragraph 3861, requiring corroboration of parties to secure a divorce, being to prevent collusion, when it is evident that collusion does not exist in a given case, the rule, both under the common law and under the statute, is relaxed.

4. DIVORCE—CONTEST SHOWS NONCOLLUSION AND RELAXES RULE REQUIRING CORROBORATION OF PARTY.—That defendant in divorce employs counsel and vigorously contests the suit by proper pleadings and evidence warrants conclusion that there is no collusion, authorizing relaxation of the rule requiring corroborating evidence.

5. DIVORCE—CONSTRUCTIVE DESERTION BY SPOUSE COMPELLING OTHER TO LEAVE ABODE.—While the party leaving the home is ordinarily chargeable with the desertion, the rule does not apply where such party has been compelled to leave because of intolerable conduct of the other, in which case there is constructive desertion by the party guilty of the intolerable conduct.

6. DIVORCE—INTENTION ESSENTIAL ELEMENT OF "DESERTION."—To constitute "desertion" there must be more than living apart for the prescribed time, it being essential that the deserting party intends to make the separation permanent and have nothing more to do with the other spouse and to disavow the marital obligations without justification.

7. DIVORCE—TRIAL COURT'S FINDINGS, FAIRLY SUSTAINED, NOT REVIEWABLE.—The rule that findings of fact by the trial court will not, when fairly sustained by the evidence, be revised, applies to suits for divorce.

8. DIVORCE — REQUESTING HUSBAND TO RETURN AFTER EIGHT YEARS HELD TOO LATE.—Under Civil Code of 1913, paragraph 3859, fixing one year as the period for desertion for a divorce, where wife's conduct has caused plaintiff husband to leave home, her request to him, made some eight years after the separation and a long time after his cause of action had accrued, was too late.

---

5. Whether a spouse who by force or misconduct causes the other party to leave the marital home deserts the latter, note, 29 L. R. A. (N. S.) 614.

8. Effort by one spouse to induce the other to return home as a condition of desertion by the latter, note, 39 L. R. A. (N. S.) 1118.

9. DIVORCE—EXPRESSIONS OF ENDEARMENT BY HUSBAND HELD NOT TO CONDONE WIFE'S DESERTION.—Where parties separated in 1907 and did not resume marital relations, letters by the husband in 1915, while ill, addressing her as "my dear wife," did not condone her original conduct in driving him from the home.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed.

Messrs. Jacobs & Partridge, for Appellant.

Messrs. McCann & Watson and Mr. Chas. L. Rawlins, for Appellee.

ROSS, C. J.—This is a suit for divorce brought by John C. Lundy against Margarette H. Lundy on the grounds of willful desertion for the statutory period of one year. The complaint was filed September 15, 1920. The defendant answered by general denial and counterclaimed, charging plaintiff with willful desertion. She asked to be divorced from plaintiff on that ground and that there be a division of the community property. At the close of the trial, defendant asked to be nonsuited on her cross-complaint, which was done. The court's decree was in favor of the plaintiff, and the defendant appeals therefrom to this court.

Because of the character of the assignments of error, we shall give such portions of the evidence as we deem necessary to present the points.

It is shown that the parties hereto were married at Globe, Gila county, on December 24, 1901; that in 1907 defendant commenced an action against plaintiff for divorce, alleging willful desertion and asking for a division of property; and that, pending suit, the property was divided by agreement, whereupon suit was dismissed, as defendant says, "by agreement."

In 1918 or 1919 the present plaintiff filed suit against defendant alleging willful desertion, which was later dismissed without trial.

Upon the trial it was shown that both parties had property, but for reasons unexplained they occupied as their home a house belonging to defendant. For some time prior to March 15, 1907, defendant, according to the plaintiff's story, had refused to prepare his meals, and had refused to wash and look after his clothes. There had also grown up some differences as to money matters in connection with improvements being placed on a 160-acre tract of land, plaintiff claiming defendant had agreed to furnish one-half the money necessary for such purpose. Plaintiff testified:

"I got the bill for the carload of posts and I took a copy of it to her. I says, 'Here is the bill for that lumber and posts.' She says, 'I ain't going to put another dollar in it.' I told her that I hadn't enough money to improve the place, and if she didn't help me I would charge her part of it to the expenses of the place. At that she rushed in with a clothes brush, grabbed my clothes and throwed them out on the floor to me, and says, 'You get out of here and don't come back.' Well, I was standing at the front room window. So when I was packing up—I got some boxes and packed my clothes and put my tobacco and shaving outfit and some hair brushes and clothes brushes in my pocket, and was starting out; and she came out of a back room and held her hands behind her back and says, 'There is nothing in this house belongs to you and you get out and stay out,' and I said, 'I will go when I get ready.' As I started out she says, 'You are a beast.' As I was going through the hall, a carpenter, Mr. Lewis, said, 'What are you doing with your clothes on your arm?' Says I, 'The old woman fired me out.' I went on through and looked at my room. I put the things in my sleeping-room. . . . Before that I had throwed over into her yard some wood from the repairs on my building next door. . . . I put my clothes in my sleeping-room and

went back over there and was throwing that wood back into my yard—I was going to use it myself—when she came out again and said: 'You brute! You are stealing my wood, are you?' I told her that the wood belonged to me and I was going to take it, and I piled the wood on my side and went back up to the house. Since that time we have not lived together as husband and wife. I have lived in that little room back of my house and she has lived in her place. She has never asked me to come back and live with her. Probably once a month or so we would meet on the street, and if she spoke to me I would speak to her, and that was all.''

J. T. Lewis, referred to by plaintiff, testified that in the year 1907 he was working for plaintiff and saw plaintiff moving his ''stuff'' from defendant's house to his own house.

Mrs. Leonora Russell testified:

''In 1909 I heard a conversation which Mrs. Shaw had with Mrs. Lundy. She asked Mrs. Lundy if she was going back to live with Mr. Lundy. Mrs. Lundy replied, 'No, I threw him out once, and I will never live with him again.' That was in the presence of Dr. [Mrs.] Shaw and myself. Later I went to work at the Fair Store. Mrs. Lundy was one of the patrons there. About a year ago Mrs. Lundy was in the store, and I asked her, 'Have you and Mr. Lundy made up?' and she said, 'No, and we never will.' ''

Defendant testifying did not deny that she used the abusive language charged against her by the plaintiff, but did deny that she had told plaintiff to leave her home and never come back, or that they had ever quarreled; stated she did not know why plaintiff had left her; that she wanted him to come home, and that in March or April, 1915, she had cooked his meals for him and waited on him while he was sick, for about a month, and that she had at that time asked him to come home. She introduced four letters written by him from California in April, 1915, telling her how he

was getting on under treatment for nervousness, and in each letter he addressed her as "my dear wife." Defendant denied making the statements testified to by Leonora Russell.

The first assignment is that the court erred in refusing to strike out, upon defendant's motion, the testimony of Leonora Russell for the reason that it is not corroborative of the testimony of plaintiff.

Paragraph 3861 of the Civil Code of 1913 provides that—

"In a suit for divorce from the bonds of matrimony the defendant shall not be compelled to answer upon oath, nor shall the complaint be taken as confessed for want of an answer, but the judgment of the court shall be rendered upon full and satisfactory evidence sustaining all material matters alleged in the complaint. Either party may be a witness, but no divorce shall be granted upon the testimony or admissions of a party unless the same be corroborated by other evidence."

Whatever may be said about the effect of this statute and its purpose, it is quite apparent that it does not make incompetent as evidence the admissions of a party to a divorce proceeding. The admissions of parties against their interest have always been regarded as evidence of the most important character. *Baker* v. *Baker,* 13 Cal. 87; *Burke* v. *Burke,* 44 Kan. 307, 21 Am. St. Rep. 283, 34 Pac. 466; 9 R. C. L. 435, § 239; 19 C. J. 144, § 368.

It is next claimed that the court erred in denying defendant's motion to nonsuit plaintiff at the close of his case, for the reasons: (1) That there is not sufficient corroboration of the testimony of the plaintiff; (2) that the evidence shows that plaintiff was the deserting party, if there was any desertion; (3) that the evidence shows that the parties separated by mutual consent; (4) that if there was a desertion at the time of the separation, such desertion had changed into a

separation by mutual consent; and (5) that defendant had in good faith requested the plaintiff to return and live with her.

It will be observed that the evidence in the case consists of the testimony of the plaintiff as to what was said and done by the defendant, the admissions of the defendant testified to by Russell, the statement of Lewis to the effect that he saw plaintiff taking his belongings from defendant's home to his own, and defendant's testimony.

The defendant contends that paragraph 3861, quoted above, forbids the granting of a divorce upon such testimony, and argues that in addition to such testimony there must be "other evidence" supporting the charge of desertion. That paragraph in its general outlines is found in the Revised Statutes of 1887 of the Territory of Arizona as paragraph 2113. It is carried forward into the Revised Statutes of 1901 without any material change as paragraph 3115. The last sentence of the paragraph prior to its incorporation into the Civil Code of 1913 reads as follows:

"Either party may be a witness, but no divorce shall be granted on the testimony of a party unless the same be corroborated by other evidence."

In the 1913 revision the above-quoted sentence is unchanged, except after the word "testimony" there is inserted the words "or admissions." Originally the prohibition was against granting a divorce "on the testimony of a party unless the same be corroborated by other evidence," but as changed the prohibition is also against the granting a divorce on "the admissions of a party unless the same be corroborated by other evidence." "A party" relates to the antecedent "either party" and means one or the other and not both of the spouses. It is singular. Appellant contends that "other evidence" means evidence aside from that of the husband and wife. But it seems that

the natural construction to be placed upon these words is that they mean other evidence than the testimony or admissions of the spouse testifying or admitting some material fact. The prohibition is against the granting of the divorce upon the unsupported and uncorroborated testimony or admissions of one of the parties, and it does not involve the rejection of the evidence of the other spouse as corroborative evidence. "Other evidence" means any competent evidence testified to by any witness qualified under the law to testify whether it be direct or circumstantial in its character, evidence from another source, but not necessarily of a different kind or quality. Its weight might be affected by the witness' interest or relation to the suit, but not its competency. So the corroboration could be by the testimony or admissions of the adversary spouse because "either party" may become a witness. In the amendment of 1913 the words "other evidence" do not take on a different meaning simply by inserting in the sentence the words "or admissions." They still mean competent evidence whatever *its* source supporting or tending to support or corroborate "the testimony or admissions of a party." The common-law disqualification to testify because of the sacred and confidential relations between the parties is entirely removed. They can be witnesses as well for as against each other. Their testimony is to be weighed as that of any other witness. The heart and soul of paragraph 3861 is that the evidence must be full and satisfactory and sustain all the material allegations of the complaint. The idea or frame of this section of our statute, together with a number of others on the question of divorce, was borrowed from the Texas laws. *Stafford* v. *Stafford*, 41 Tex. 111; Sayles' Texas Civil Statutes, arts. 2976–2988. The Court of Civil Appeals, in *Ingle* v. *Ingle*, 62 Tex. Civ. App. 205, 131 S. W. 241, has said

concerning article 2979 of the Revised Statutes of Texas:

"We have no like statute with reference to any other subject of litigation, and it is evident that the article quoted confers large discretionary power and strictly imposes delicate duties upon the trial judge in the matter of decreeing a divorce from the bonds of matrimony. Whatever the action or want of action on the part of the defendant, the petition must not 'be taken as confessed,' but the decree must be rendered upon 'full and satisfactory evidence.' As said by our Supreme Court in *Moore* v. *Moore*, 22 Tex. 240: 'The law has wisely enjoined upon the courts the duty of watching over these proceedings with the strictest scrutiny, and interposing to prevent abuses of the delicate and responsible power confided to them to dissolve the marriage contract. What shall be deemed sufficient cause of divorce must ever be matter of law; and the law has made it the duty of the judge to refuse a decree, unless satisfied of the truth and sufficiency of the evidence by which those causes are established.' "

The corroboration exacted by the statutes before a divorce can be granted is to the testimony of the party seeking the divorce when it stands alone. It is not necessary when corroborated by the other party's admissions. This is no strange or novel thing in the laws of the country. Section 3173 of the Iowa Code declares that "no divorce shall be granted on the testimony of the plaintiff alone." In *Leonard* v. *Leonard*, 174 Iowa, 734, 156 N. W. 803, the court said, of this provision:

"The manifest object of this requirement is to prevent collusion. To that end, evidence other than that of complainant, either circumstantial or direct, tending to establish the ground charged for obtaining the divorce, must have been adduced. It is not necessary that it be sufficient to sustain the decree. Nor was it essential that the plaintiff's testimony be corroborated at every point or that it touch every element or in-

gredient of the marital offense alleged in the petition.''

In the case of *Heinmuller* v. *Heinmuller,* 133 Md. 491, 105 Atl. 745, the court said:

''It is provided by section 4, article 35, of the Code, that no divorce shall be granted upon the testimony of the plaintiff alone;-but in all such proceedings, testimony in corroboration of that of the plaintiff shall be necessary. The object of the provision quoted is to prevent collusion, and when the whole case precludes, as it does here, any possibility of collusion, the corroboration needs be slight''—citing cases.

The rule of the common law and the English ecclesiastical law was that a divorce would not be granted on the admissions or confessions of the parties where such admissions or confessions were not corroborated, and that is the rule now in the different states, except where it has been supplanted or modified by statute. Of course, where the legislature has provided a different rule, as it has done in this state, the common law and the ecclesiastical rule do not prevail. The reason of the rule requiring corroboration as suggested by all the authorities is to prevent collusion between the parties. It had its origin in an effort to prevent the parties from acting in concert to secure a dissolution of their marriage contract upon simulated and false grounds. When it appears that the reason for the rule does not exist in a given case, the rule itself, both under the common law and under the statutes of the different states, is greatly relaxed. Bishop on Marriage, Divorce and Separation, volume 2, section 719, says:

''In reason, if it affirmatively appears in evidence that there is no collusion, this established fact gives to the confessions the same status and effect which the like confessions have in the other departments of the law of evidence.''

The same liberal rule with reference to statutes requiring corroboration of the testimony or admissions of a party is followed by the courts throughout the country. *Tuttle* v. *Tuttle,* 21 N. D. 503, Ann. Cas. 1913B, 1, 131 N. W. 460; *De Cloedt* v. *De Cloedt,* 24 Idaho, 277, 133 Pac. 664; *Clopton* v. *Clopton,* 11 N. D. 212, 91 N. W. 46; *Andrews* v. *Andrews,* 120 Cal. 186, 52 Pac. 298; *Clark* v. *Clark,* 86 Minn. 249, 90 N. W. 390.

As to whether there is collusion or not must be determined by the court, and each case in that regard is its own problem. No fixed rule applicable to all cases for determining the question can be laid down. There is one, however, that ordinarily may be trusted to negative collusion, and that is this, if the defendant employ counsel and vigorously and earnestly contest the grounds of divorce by proper pleadings and the introduction of controverting evidence, it is safe to conclude that there is no collusion. It is said by the learned author just quoted above, at section 722:

"Indeed, the circumstances under which the confession was shown to have been made, likewise the mere fact appearing in the case that the suit was plainly adverse and seriously resisted, have been severally held to so establish such absence of collusion as to justify divorce without other or outside evidence."

The defendant in this case has employed eminent counsel and in other ways clearly shown that she is averse to the divorce being granted. The whole record in this case absolves the parties from any imputation of collusion.

The plaintiff in this and one other suit has charged the defendant with willful desertion, and the defendant in this, and another suit, has made a like charge against plaintiff. It may therefore be taken for granted that one of the elements entering into willful

desertion is amply established. Consistent with these charges and recriminations, the testimony conclusively shows that the plaintiff and defendant have continuously since their separation on or about the fifteenth day of March, 1907, lived separate and apart from each other. The question is: Which has deserted the other, or has this separation been by mutual consent? That plaintiff took his belongings from defendant's home and established his residence in another house on or about that date is not questioned. The reason for making the change he sets forth in his evidence heretofore quoted. If the defendant said and did the things to which the plaintiff testified, the plaintiff's action in leaving her home is but natural. It was her property, the ownership of which would entitle her to its possession and exclusive dominion. When the defendant addressed the plaintiff as charged, it would seem that he had no other alternative than to do as he did. The party who leaves the home ordinarily and generally is the one against whom the desertion is charged. That rule, however, does not hold where such party has been compelled to go away because of the intolerable conditions at the marital abode. Such a desertion is a constructive one; "that is, if one party should by his or her bad conduct drive away the other or give reasonable justification to the injured party for leaving the offender, the separation would be regarded as a desertion of the innocent party by the guilty, although the innocent may have been the one actually leaving the marital abode." Peck, Parsons, Domestic Relations, p. 159.

The rule is succinctly but differently stated as follows:

"The rule is well settled that where one spouse drives the other, who is innocent of any offense against the marriage relation, from the matrimonial domicile, the former is guilty of deserting the latter."

Note to *Hudson* v. *Hudson*, 21 Ann. Cas. 278, (S. C.,
59 Fla. 529, 138 Am. St. Rep. 141, 29 L. R. A. (N. S.)
614, 51 South. 857).

In *Andrade* v. *Andrade*, 14 Ariz. 379, 128 Pac. 813,
we quoted from *Luper* v. *Luper*, 61 Or. 418, 3 A. R. C.
790, 96 Pac. 1099, with approval, the following defini-
tion of "desertion":

"Desertion or abandonment consists in the volun-
tary separation of one spouse from the other for the
prescribed time, without the latter's consent, without
justification, and with the intention of not returning."

According to this definition, there must be some-
thing more than a living apart by the parties for the
prescribed time—in this state one year. The desert-
ing party must entertain the intention to make the
separation permanent; to have nothing more to do
with the other spouse as such; to break off all marital
relations and disavow their obligations and duties
without justification. 19 C. J. 57, § 110. Whether the
defendant used the language to the plaintiff that is
ascribed to her, and whether she meant thereby to
sever for all time the marital relations, were ques-
tions of fact to be determined by the trial court. If
the defendant did call the plaintiff a brute and did
charge him with stealing, and did drive him from her
home (and these were questions for the trial court to
determine) her offense against the marital relation
was a very serious one.

The rule of this court is that the decision of facts
by the trial court will not, when fairly sustained by
the evidence, be revised or overturned. This rule, we
think, holds in divorce cases as well as in others. In
*Robinson* v. *Robinson*, 159 Cal. 203, 113 Pac. 155,
which was a divorce case, the court said:

"We are bound by the well-established rule that the
decision of the trial court upon issues of fact is con-
clusive upon us in so far as there is any substantial

evidence tending fairly to support such decision, even though we may think that a different conclusion should have been arrived at. . . . The trial court was the exclusive judge of all questions of credibility of witnesses and weight of evidence, and must be assumed to have considered all the evidence given in the light of such rules as are laid down by the law for the guidance of court and jury in the determination of questions of fact.''

See, also, *Broderick* v. *Broderick,* 40 Cal. App. 550, 181 Pac. 402.

We think we ought to be fully persuaded that this court must have reached a different conclusion had it occupied the position of the lower court and been favored with all the advantages of that court for judging rightly, before overruling the decree made. *Nicholas* v. *Nicholas,* 50 Mich. 162, 15 N. W. 64.

The contention on the part of defendant that she had in good faith requested the plaintiff to return and live with her remains to be disposed of. Under our statute (paragraph 3859), the desertion must be for one year before a right of action accrues.

''Where one spouse has been guilty of a legal desertion, it seems well settled that he or she, in order to deprive the other of the right to a divorce, must make the overtures for a reconcilation before the statutory period has elapsed and the right of the deserted spouse to a divorce has accrued. Overtures after such right has accrued are ineffectual to deprive the deserted spouse of his or her right to a divorce.'' 9 R. C. L. 373, § 161; 19 C. J. 67, § 125.

The evidence of the defendant places the date of her offer to become reconciled to plaintiff as April or May, 1915, some eight years after the separation and a long time after plaintiff's right of action accrued. It came too late.

In view of the fact that the parties did not resume the marital relation, we do not attach any great importance to plaintiff's letters written in April, 1915,

from Los Angeles, where he was ill, to the defendant, in which he addressed her as "my dear wife." Such expressions of affection would not in and of themselves obliterate his ripened cause of action. Notwithstanding these letters, defendant states in her testimony that plaintiff did not accept her invitation to return to her home to live. In themselves they would not show a condonation of defendant's offense. *Walker* v. *Walker,* 14 Cal. App. 487, 112 Pac. 479.

The judgment of the lower court is affirmed.

McALISTER, J., concurs.

FLANIGAN, J.—I dissent for the reason that I am convinced that the court's construction of section 3861 of our Civil Code is not justified by the statutory intent or language. I quote the statute:

"In a suit for divorce from the bonds of matrimony the defendant shall not be compelled to answer upon oath, nor shall the complaint be taken as confessed for want of an answer, but the judgment of the court shall be rendered upon full and satisfactory evidence sustaining all material matters alleged in the complaint. Either party may be a witness, but no divorce shall be granted upon the testimony or admissions of a party unless the same be corroborated by other evidence."

The general rule in the absence of statutory provision is that a divorce will not be granted on the uncorroborated testimony of a party, or the parties, to the suit; and, according to the weight of authority, a divorce will not be granted on the admissions, or confessions, of the parties, or either of them, where such admissions or confessions are uncorroborated. See cases cited in notes to *Tuttle* v. *Tuttle,* 21 N. D. 503, Ann. Cas. 1913B, 3, 131 N. W. 460.

The object of these rules is the prevention of collusive divorces. I think the statute should be con-

strued to effectuate rather than to defeat its manifest purpose, and that if it were intended that the admissions of the defendant should suffice to corroborate the testimony of the plaintiff, that such intention would have been plainly expressed. There should be no doubt, I submit, as to the meaning of this section, whether read with or without relation to the general policy which is to be subserved by the enactment.

While I am in accord with the suggestion in the opinion that where it is apparent—as here—that collusion does not exist, that the corroboration need then be but slight, the cause of action being on the whole proved by full and satisfactory evidence, I do not think that the court should be at liberty to act upon its own judgment as to the existence of a cause of action where the evidence is not corroborated as required by the statute.

It is held in the opinion that in actions for divorce the testimony of the plaintiff may be corroborated by (1) the testimony of the defendant; (2) the admissions of the defendant; (3) evidence of other sorts, which I think very properly should be called by the statutory term "other evidence."

I think the statute was designed to negative the sufficiency of the evidence in the two cases first mentioned, and that the language used clearly expresses the prohibition, and that the natural and obvious meaning of the last sentence of the section is to permit one or both of the parties to testify in the case, but to require evidence other than the testimony or admission of the parties to make the proof upon which the court is authorized to act in decreeing a divorce.

That "no divorce shall be granted upon the testimony or admissions of a party unless the same be corroborated by other evidence" means that a party's testimony or admissions—merely because he or she is

"a party"—cannot be corroborative of anything, that quality being expressly denied it. And, separating "testimony" from "admissions," as is done because of the formally disjunctive word "or," is, I think, unwarranted. If the prohibition extended only to the "testimony" of the parties, corroboration might, presumably (construing the statute as an integration of all rules pertinent to its subject matter), be effected by the admissions of an opposing party; but, in order, as I think, to put it beyond the power of the parties to effect indirectly that which they could not do directly, the words "or admissions" were used, adding to the prohibition of direct testimony the prohibition of admissions.

And the remaining provisions (the first sentence) of section 3861 import a rigor of proof required of the plaintiff, and afford such opportunities to the defendant to show the facts adverse to the alleged grounds for divorce, as well indicate that the legislature shared in the general and historic distrust of the testimony or admissions of the parties themselves in such cases. For the defendant is not required to answer the complaint under oath, or, in fact, to answer at all. If no answer is filed the allegations of the complaint must nevertheless be proved by "full and satisfactory evidence," and the ordinary judicial admission of the truth of the allegations of the complaint implied from a failure to answer it is expressly negatived. Even if no answer is filed, the testimony of the defendant, if offered, must be received, as "either party may be a witness." In short, the defendant may be in court to oppose the granting of the relief prayed for by the complaint, without having answered, a right given to a defendant in no other case.

While New Jersey has no statute on the subject, the rule there, as announced by the courts of that state,

is that a divorce will not be granted "upon the un-corroborated testimony or admissions of a party to the suit." In *Garrett* v. *Garrett,* 86 N. J. Eq. 293, 98 Atl. 848, the court applied this rule, and in doing so used language which so well expresses my views that I quote:

"Now, as a divorce cannot be granted upon the un-corroborated testimony of the husband as to his wife's guilt, nor upon her uncorroborated confession of that guilt, it follows necessarily that the uncorroborated testimony, plus the uncorroborated confession, amount to no more than each standing alone, and are not legal evidence. True, both the testimony and the confession are admissible in evidence, but each must be corroborated in order to be effective as evidence in the cause."

As the testimony of the plaintiff was not corroborated as the statute requires, the judgment should, in my opinion, be reversed.