ALEJANDRO RUIZ-SOLER, Plaintiff and Appellee, v. ANUNCIA-CIÓN MORAZZANI Y BOSCH, Defendant and Appellant.

No. 4413.   Argued April 20, 1928.—Decided December 18, 1928.

Benet & Souffront for the appellant.   M. Figueroa del Rosario for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Dr. Alejandro Ruiz Soler contracted marriage in 1908 with Anunciación Morazzani Bosch and four children were born of that union.   The oldest child was 16 years of age and the youngest 6 when in February of 1926 the husband brought this action for divorce on the ground of abandonment by the wife for more than one year.   She opposed the complaint and presented a counter-complaint praying for a divorce on the ground of abandonment by her husband. After trial the district court of San Juan rendered judgment

sustaining the complaint with the consequent pronouncements and dismissing the counter-complaint, whereupon this appeal was taken from that judgment by the aggrieved party.

As the pleadings of the parties were contradictory with respect to which of the consorts abandoned the other, so also was the evidence contradictory on that question, and the trial court expressly adjusted the conflict by giving entire credit to the plaintiff's evidence and accepting it as a basis for the judgment. In reaching that conclusion the court said that there was hardly any other evidence than the testimony given by the parties; that the solution of the case depended on the credibility to be given to one or the other party, and that by his manner of testifying and of expressing himself the plaintiff seemed to be a man who had suffered greatly from the circumstances of his home life and that he had testified with full knowledge of what that meant to him.

There was no dispute between the parties that when the complaint was presented several years had gone by since the spouses had lived together and that they had had no intercourse since their separation.

In consequence of the foregoing the errors assigned by the appellant relate almost exclusively to the weighing of the evidence by the trial court, they being that there was error in finding that the defendant abandoned the plaintiff; in finding that the defendant refused to follow her husband to Caguas; in adjusting the conflict in the evidence against the defendant; in finding that the plaintiff was justified in leaving the marital home, and in dismissing the counter-complaint. With the exception of one, we shall consider the assignments together.

The litigant spouses lived with their children in a house on Canals street in the ward of Santurce of this city. According to the amended counter-complaint, which is what we have before us, the wife owned the house by purchase with funds which she had inherited. The appellee was the Insular

Commissioner of Sanitation and when he ceased to hold that office he had to look for new means of earning a living by his profession and opened an office in a house in Santurce; but later, believing that Caguas would be a better field for his activities, he went to that city in the beginning of 1923 and rented a large house for his wife and their children, and as the spouses had not been living together for six months when he moved, he wrote to his wife to come to Caguas with the children and live with him. His letter was not answered and he then commissioned his brother José to speak with her personally for that purpose, which he did and was told by her that she did not wish to live with her husband. Some months thereafter the plaintiff gave up the house in Caguas and returned to San Juan as physician of the asylums, but after a month and a half he returned to Caguas where he was appointed health officer. Having to reside there on account of that office, he rented another house there for his family and wrote another letter to his wife asking her to come and live with him. No answer to that letter was received by him and he again commissioned his brother José to request his wife to move to his home in Caguas, and she refused. Notwithstanding this, the husband held that house for two years and until his increased expenses for keeping up that home with servants and paying the expenses of the house occupied by his wife and children forced him to give up the house and live thereafter as a boarder.

On direct examination the plaintiff testified only that when he went to Caguas the first time he had not been living with his wife and children for six months, but was intending to arrange another house for his wife, as he did in Caguas, and it was in his cross-examination by the adverse party that he testified that in a quarrel with his wife she ordered him out of doors, saying "well, it is high time for you to leave this house; you know that this house has been bought with my money and you will please leave right now;" and that

because of that humiliation he did not return to live with his wife in that house, but intended to offer her another house from which she could not expel him. In her testimony the defendant admitted the quarrel and denied that the ordered her husband out of the house; but that the occurrences were as said by the appellant is somewhat shown by the fact that she alleged unnecessarily in her counter-complaint that the house in which they lived was owned exclusively by her.

The defendant also admitted in her testimony that José Ruiz Soler went on two occasions to talk with her, but denied that it was for the purpose of asking her to join her husband in Caguas, saying that, on the contrary, it was to tell her that her husband no longer loved her and wanted her to bring an action for divorce, which she refused to do because she did not want to be divorced. However, her last statement is contradictory to her action of praying for a divorce in her countercomplaint and to her allegation that there was error in not sustaining her claim for the divorce. She also testified that she was willing to live with her husband, but apart from the fact that that assertion is not in accord with her conduct before and after the action was brought by her husband, it can not weaken the action of the plaintiff if he has a cause of action. *Meléndez* v. *Pérez Díaz, ante,* page 727.

The appellant and witness José Ruiz Soler agreed that the conferences between them were held secretly in the parlor of the house, the witness saying that this was done in order to conceal from the children the quarrels of their parents; yet the appellant called as a witness her mother, who testified that when José Ruiz Soler arrived at the house the appellant was with her children in the dining-room and when he entered it he said that his brother did not intend to return to that house and wanted her to give him a divorce. This witness contradicted herself, for she testified later that he asked for the appellant who left her children and they went to the parlor where they had a conversation which she over-

heard from another room. Similar testimony was giving by Josefina Campesino, another witness for the appellant, as to her having heard that conversation in the parlor from another room; but these statements do not appear to be credible, for if both litigants admit that the conversation was secret it is not natural that it was carried on in such loud tones that it could be heard in another room and less so if its object was to make a proposal for divorce.

The appellant testified also that she had tried to induce her husband to return to the home through their children who saw him frequently; but her testimony was confined to this without producing the children as witnesses in order to ascertain whether they had really spoken to their father about the matter and his answer to them.

Summarizing the foregoing, we will say that as there was no allegation of passion, prejudice or partiality on the part of the trial court, we are of the opinion that it did not err in adjusting the conflict in the evidence by giving credit to that of the plaintiff and basing its judgment thereon.

The only question of law raised in this action is whether the fact that the husband left the house in which he was living with his wife about six months before he prepared another house in Caguas for her and their children and invited her to move into it constitutes abandonment on his part which prevents him from recovering judgment in the action for divorce.

We have seen that the appellee stopped going to the house in which he was living with his wife when she ordered him out of the house which she had bought with her own money; not with the intention of leaving her permanently, as he says, but of living with his wife in another house where he could not be ordered out by her, as is shown by the fact that some six months thereafter when he went to Caguas he rented a house there for his family and requested her to go and live in it. Therefore, there is no abandonment on his part, for

under the circumstances of the case his leaving the marital home was not wholly unjustified, nor was there any intention of permanently breaking his relations with his wife. It was the conduct of the wife that rendered impossible the marital relations in that home and therefore it is not the husband, but the wife, who was guilty of abandonment. 19 C. J. p. 61, par. 116–117 bb. In a case from the Supreme Court of Arizona, *Lundy* v. *Lundy*, 202 Pac. Rep. 809, very similar to the case under consideration because while the spouses were living in a house belonging to the wife he left the marital home on her ordering him to leave the house and not come back, in affirming the judgment granting the divorce for abandonment sued for by the husband the court said that the question was which of the spouses abandoned the other and that if the defendant had said and done the things testified to by the plaintiff, the latter's action in leaving the house was natural and that the husband had no alternative than to do what he did, adding the following: ''The party who leaves the home ordinarily and generally is the one against whom the desertion is charged. That rule, however, does not hold where such party has been compelled to go away because of the intolerable conditions at the marital abode.''

The judgment appealed from must be affirmed.