### SAMUEL THOMAS

*v.*

### PRISCILLA THOMAS.

*Filed at Ottawa October 29, 1894.*

1. SEPARATE MAINTENANCE—*when offer by wife to return must be shown.* A wife, voluntarily quitting her husband's house without cause, must in good faith offer to return, and be refused, before her living apart will be "without her fault."

2. SAME—*she cannot require husband to bring her back.* In such case the wife cannot, if the husband is willing to receive her, stand upon a mere sentiment as to the manner of getting back, but must make direct offer to return.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. CHARLES R. STARR, Judge, presiding.

Messrs. KAY & KAY, and Mr. N. J. PILLSBURY, for the appellant :

The wife cannot voluntarily abandon her husband, or voluntarily remain away from him, and be entitled to separate maintenance. 1 Bishop, sec. 573 ; *Wahle* v. *Wahle,* 71 Ill. 510 ; *Bevier* v. *Galloway,* id. 517 ; *Angelo* v. *Angelo,* 81 id. 251 ; *Ross* v. *Ross,* 69 id. 569.

Mr. FREE P. MORRIS, Mr. F. L. HOOPER, and Messrs. PAYSON & OREBAUGH, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the court :

This was a bill filed by appellee, against appellant, for separate maintenance. The cause was tried on bill, answer, replication and proofs, and a decree entered allowing complainant $150 per annum, and making the same a lien on the husband's land, amounting to some two hundred acres, worth about $40 per acre. The Appellate Court for the Second District having affirmed the decree of the circuit court, this appeal is prosecuted. The principal ground of reversal urged here is, that the proofs fail to support the decree of the circuit court.

The allegations of the bill showing why appellee is living separate and apart from her husband are : "That on or about the 26th day of August, 1886, she became sick from the effects of a sunstroke, and while so disordered she left the home of the defendant and returned to the place where she had lived prior to her said marriage to the defendant ; that at the time when she went from the home of the defendant she was suffering from the effects of said sunstroke, and did not realize or understand what she was doing ; that shortly after she left defendant's said home she regained her former health, and requested her husband to permit her to return to his home ; that she has repeatedly and earnestly pleaded with the defendant to take her back and to make suitable and reasonable provision for her ; that the defendant has often

promised to take her back and to provide for her accord-
ing to his means, but that he as often finds some excuse
for not so doing ; that he has recently declared that he
did not intend to take her back or provide for her in any
way." The answer of the defendant denied each of these
allegations.

Paragraph 22, chapter 68, of the Revised Statutes,
(Starr & Curtis,) provides : "That married women who,
without their fault, now live or hereafter may live sepa-
rate and apart from their husbands, may have their rem-
edy in equity, in their own names, respectively, against
their said husbands, for a reasonable support and main-
tenance while they so live or have so lived separate and
apart." The bill in this case is not based upon any ill-
treatment by the husband, nor upon any misconduct on
his part. It states that she left him and his home and
returned to the place where she formerly lived. The only
reason attempted to be given for doing so is that she did
not then know what she was doing. The evidence clearly
shows the contrary. If testimony can prove any fact, it
establishes beyond doubt that she knowingly and volun-
tarily left the defendant and his home and took up her
residence where she had formerly lived, remaining there
about three weeks before saying anything to her husband
about returning. If her right, then, to the decree ren-
dered in her favor depended upon the question as to
whether her separation from her husband was, in the first
instance, without her fault, there could be no serious con-
tention that it was not erroneous. *Bevier* v. *Galloway*, 71
Ill. 517 ; *Wahle* v. *Wahle*, id. 510 ; *Jenkins* v. *Jenkins*, 104 id.
134 ; *Johnson* v. *Johnson*, 125 id. 510.

The question then must be, did her so living after-
wards become without her fault, by reason of her offer to
return and his refusal to receive her back. Even though
the original separation was without any fault of the hus-
band, still if she afterwards, in good faith, offered to re-
turn and live with him, it was his duty to receive her back

and there properly provide for her. On this question the testimony shows that she wanted to return and that he was willing she should. In other words, according to the testimony of both of them, the question between them was, not whether she wanted to return or whether he was willing she should, but how she should get back. If they, or either of them, are to be believed, then if she had gone back he would have been content, or if he had conveyed her back she would have been satisfied to return. She insisted he should take her back,—that is, provide a conveyance for her from the place where she was, to his home,—and he insisted that she should come without his assistance. The distance was but two miles. There is no pretence that she had not ample facilities for returning. It was not necessary, in order to show her good faith in returning, that she should take back with her the property she had removed when she left. If she had gone back in person, and he had refused to allow her to remain, or shown an unwillingness that she should do so by refusing to bring back her furniture, etc., or otherwise, then, perhaps, she might have truthfully said that she was living separate and apart from him without her fault. As it is, the parties are making a mere difference in sentiment, as to the manner in which the wife should return, a cause for living apart. It is easy to say, and truthfully, that the husband's conduct is selfish; that he is lacking in politeness,—certainly in gallantry,—in refusing to escort his wife back to his home; but will the law recognize such a separation of husband and wife? Is it not so contrary to its policy that it will require the one asking its recognition to yield the mere matter of sentiment and make the direct offer to return? If this decree can be sustained on the evidence before us, we can see no reason why every wife who may, for any cause, be absent from her home and that of her husband, may not refuse to return unless her husband will escort her back, and if he refuses to do so, maintain her bill for separate main-

tenance. The marriage relation cannot be so readily thrown off.

We are clearly of the opinion that the complainant below has wholly failed to show that she was, at the time of filing her bill, living apart from her husband without her fault, within the meaning of the statute as it has been frequently construed by this court, as shown by the foregoing cases.

The judgment of the Appellate Court and the decree of the circuit court will be reversed, and the cause will be remanded to the circuit court with directions to dismiss the bill.

*Reversed and remanded.*