## Jacob Silverstein, Appellee, v. Bessie Silverstein, Appellant.

### Gen. No. 17,089.

1. DIVORCE—*desertion.* Where a wife, within two years after leaving her husband, makes bona fide offers to return to him and live with him as his wife and he refuses her, he cannot afterwards maintain an action for divorce on the charge of wilful desertion, unless some other legal ground appears that will excuse him for refusing to live with her.

2. DIVORCE—*desertion.* Where a wife, within two years after leaving her husband, makes an offer in good faith to return, the desertion terminates, and if she is barred the legal attitude of the parties may be reversed, constituting the husband offended against from that time forth the offender.

3. DIVORCE—*desertion.* Finding of desertion for two years *held* manifestly against the weight of the evidence.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court

at the October term, 1910.  Reversed and remanded with directions. Opinion filed March 12, 1913.  Rehearing denied April 3, 1913.

PATTISON & SHAW, for appellant; DOUGLAS C. GREGG, of counsel.

WHITMAN & HORNER, for appellee; LLOYD C. WHITMAN and LOUIS SALINGER, of counsel.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

Jacob Silverstein obtained a decree of divorce from his wife, Bessie Silverstein, upon a hearing before the court without a jury, on his bill filed September 30, 1909, charging wilful desertion for two years and more prior to the filing of the bill.

On this appeal Mrs. Silverstein urges one ground for a reversal of the decree, that it is not supported by the weight of the evidence. It is virtually admitted that appellant left her husband June 7, 1907, without any sufficient legal grounds therefor, and that they have never lived together as husband and wife since that date. She filed a bill for separate maintenance against appellee on the day she left him, but after the evidence was heard in that case her bill was dismissed on her motion. Appellant insists that after she left her husband, and long before she had been away from him two full years, she repeatedly offered in good faith to return to appellee's home and to live with him as his wife, if he would receive her back and live with her, and that she sent a number of persons to him to entreat him to forgive her and to live with her again, and that she went to his home to live with him, but that he at all times refused to live with her and kept his house locked so that she could not enter it. The following is the substance of the evidence bearing upon that question, as it appears in the record, to wit:

Mrs. Silverstein: "Six months after I left him, I felt like going back and living with him. I tried to

go home every week, but found the house locked with a big lock, so that I could not enter the house at all. I did not go to see him at his store or place of business, because I felt that he wouldn't talk to me and wouldn't receive me, and I felt in my heart that he was angry and would not give me an answer. I sent Mrs. Tietelbaum, Dr. Rouf, Mrs. Brown, Mrs. Aaron, and my son, Adolph, to see my husband and to get him to live with me, and I was informed by them that he refused to take me back, because I left his home. After Mrs. Tietelbaum saw my husband, she reported to me that he told her that in six weeks he would try to give her an answer, but I never heard from him." Appellant also testified that she was still willing to return at any time to him and live with him as his wife.

Dr. Rouf: "I knew appellee and his wife for thirteen years. Mrs. Silverstein came to me crying and said that she was very badly treated by her husband, and begged me to go to him and ask him to let her go back to him, and live with him; that she had had a misunderstanding with him and left the house for a week, and that when she went back she found a big lock on the door and could not get in. I then went to Mr. Silverstein's store and said to him: 'Mrs. Silverstein is a very honest, respectable woman, she treated you very nice, she is a good housekeeper, and I don't see any reason why you should not let her into the house, and I would advise you to let her come home.' I insisted and he said, 'I won't do it under any circumstances.'" He also testified that he went back and told appellant the conversation he had with appellee, including appellee's answer.

Mrs. Aaron: "At appellant's request I went to see appellee in September, 1908, and told him that Mrs. Silverstein sent me to him and that she wanted to come back to him. He replied that he was poor, business was not going good, and that he could not let her come back. I then said to him, 'You had better take

your wife home, it is now before the Jewish Holiday, and God will forgive you and so will she.' At first he didn't want to listen, but later on said he would see, he was going to wait. About that time his daughter came in and he went away with her. I told Mrs. Silverstein the conversation between appellee and me, just as it occurred. I never went back to see him again.''

Mrs. Brown: ''Mrs. Silverstein asked me to go and see Mr. Silverstein early in the fall of 1909. I told him Mrs. Silverstein sent me, and I asked him if he wouldn't consider taking her back again, that she would be willing to come back, that she was willing to forgive everything and do anything to have a pleasant home. He said he didn't know, he thought it was too late, that he was poor, and he promised to come to my house and meet Mrs. Silverstein, and said he would phone me, but he never came.''

Adolph Weinstein: ''I am a son of Mrs. Silverstein. In May, 1908, I talked with Mr. Silverstein and told him mother had suffered enough, and asked him if he didn't think it right and proper to make up with mother, and told him she would rather go back to him and have a home of her own, and for him to think it over. His only answer was, 'Well, business is bad, I can't afford to do it.' I went over again in a few days and talked to him on the same line, and I said, 'Please see what you can do, it is only right you people should make up.' He promised he would do the best he could and I waited and never got any other answer. I saw him again in March, 1909, and told him I didn't see any excuse for not making up with mother, and he said, 'I can't do it; I am busy just now.' I made another appointment with him and urged him again to live with her in about June, 1909, and he replied, 'There is no use talking to me, I can't do it.' I told my mother what he said and she said she still had hopes.''

Silverstein v. Silverstein, 178 Ill. App. 145.

Mr. Silverstein in rebuttal: "After my wife left me Adolph Weinstein and I talked together. He came to the store and said, 'How do you do' I didn't want to answer him. Then he said, 'I would like to speak to you.' I said, 'I haven't got any time to speak,' and then he said something, but I didn't pay any attention to him, and he walked away. That was all. He just asked me about business, and I answered him cold, and he walked away. He came to the store a second time and said, 'I would like to see you; come up to Ma's house.' I said, 'No, I will never go down there.' That is all that was said on that line. Later I saw him again at Mr. Toff's wholesale shoe place. I didn't speak to him there." He also testified that he had no such conversation with Dr. Rouf and Mrs. Brown and Mrs. Aaron in regard to again living with his wife, as they related, although he testified he met them and talked with them about the times they mentioned. His daughter, Rena, also denied in her testimony meeting Mrs. Aaron in company with her father, as related by Mrs. Aaron in her testimony.

Mrs. Tietelbaum: "Mrs. Silverstein asked me to tell her husband that she wanted to go back to him. I told him and he said, 'Yes, come.' I told her what he said. Mrs. Silverstein used to come up about once every week. I told Mrs. Silverstein that Mr. Silverstein said, 'Come back'. She said she would like to see him first and talk with him. This conversation took place before the two years expired. Mrs. Silverstein told me two years she couldn't come home. I saw a padlock on the front door of their flat for a week or ten days after Mrs. Silverstein left her husband. I never told her that Mr. Silverstein would give an answer as to whether he would take her back in about six weeks. He said he would give an answer, but he never mentioned dates."

The only ground appearing in the record or claimed by appellee for divorce is the wilful desertion of him

by appellant for two years prior to the filing of his bill. Where the wife without a legal cause therefor wilfully deserts her husband, if the wilful desertion continues for the full time of two years or more without the wife returning, or in good faith offering to return and live with him as his wife, the husband is entitled to a divorce; and offers by her to return after the two years have expired, although made in good faith, would not be a bar to his right to a divorce, even if the offers by her were positively refused by the husband. Where, however, the wife within two years after leaving her husband makes *bona fide* offers to return to him and live with him as his wife, and he refuses her, he cannot afterwards maintain an action for divorce on the charge of wilful desertion, unless some other legal ground appears that will excuse him for refusing to live with her. "For two years the doors for repentance and return must be kept open, and if it is closed and barred when an offer to return is made in good faith, not only is the desertion terminated, but the circumstances may be such as to reverse the legal attitude of the parties, and constitute the party originally offended against, from that time forth, the offender." Albee v. Albee, 141 Ill. 550, affirming 43 Ill. App. 370.

The evidence in this record convinces us that appellant made in good faith the offers to her husband to live with him as his wife, and before she had been away from him two full years, as related by herself and her witnesses, and that he refused her overtures. He testified on the trial that he told Mrs. Tietelbaum he would live with his wife when she told him his wife wanted to live with him again. His other testimony, however, clearly shows that he did not want to live with his wife, when considered with the other evidence in the record, and that at the time of the trial he was, as to the charge of wilful desertion, the real offender himself. For the reason that the finding of the court

that appellant was guilty of wilful desertion for the full space of two years is manifestly against the weight of the evidence, and that appellee is not entitled to a decree of divorce in this case, the decree of the Circuit Court is reversed and the cause remanded with directions to dismiss appellee's bill at his costs. *Decree reversed and cause remanded with directions to dismiss the bill.*