Argued February 9, reversed and dismissed April 4, 1922.

# LARSON v. LARSON.

(205 Pac. 540.)

**Judgment—Must be Specially Pleaded to Operate as Estoppel.**

1. If a party desires to rely upon a former judgment or decree as an estoppel, he must plead it with particularity.

**Divorce—Decree Admissible in Evidence in Subsequent Proceedings to Show Relations of Parties Without Special Pleading.**

2. In suit for divorce, defendant is entitled to offer in evidence a previous decree awarding her separate maintenance, though her answer was only the general issue, where the decree was offered, not as an estoppel against plaintiff, but merely for the purpose of showing the relationship of the parties to each other and the history of their transactions.

**Divorce—After Expiration of Period of Desertion, Guilty Party cannot Compel Reconciliation.**

3. Where a husband had deserted his wife for more than the year required to give her a right of action for divorce, he cannot, by then offering a reconciliation to her, entitle himself to the divorce on the ground of her desertion if she refuses to accept his offer.

**Divorce—Offer of Reconciliation Held not Made in Good Faith.**

4. Where a husband had made three previous efforts to secure divorce from his wife, in one of which she had secured a decree for separate maintenance by her cross-action, a request by the husband shortly after the decree for separate maintenance was rendered that she again live with him *held* not made in good faith, but made to avoid the effect of the separate maintenance decree, and to enable the husband to procure a divorce.

From Clackamas: J. U. CAMPBELL, Judge.

Department 1.

REVERSED AND DISMISSED.

For appellant there was a brief over the names of *Mrs. Willamette McElroy* and *Mr. George S. Shepherd,* with an oral argument by *Mrs. McElroy.*

For respondent there was a brief over the names of *Mr. A. S. Dresser* and *Messrs. Brownell & Sievers,* with an oral argument by *Mr. Dresser.*

BURNETT, C. J.—After alleging the necessary residence qualifications and the marriage of the parties, the plaintiff charges "that on or about the twenty-first day of April, 1918, defendant willfully deserted and abandoned this plaintiff without cause or provocation being given by this plaintiff and against this plaintiff's wish and desire, and has ever since said time continued to desert and abandon this plaintiff." The only answer interposed by the defendant is a denial of every allegation of the complaint except the existence of the marriage relation between the parties. The Circuit Court rendered a decree dissolving the marriage relation, and the defendant appeals.

It appears in evidence that this is the fourth attempt of the plaintiff to rid himself of his wife by suit. The testimony shows that they resided on a homestead in Klickitat County, Washington, and that the plaintiff was absent from home a great deal, leaving the defendant there alone. After having made his final proof on the homestead and having received a final certificate, the plaintiff relinquished the same, evidently with the design of preventing the defendant from securing any benefit from it under the community property laws of Washington. He commenced his first suit in Klickitat County, and dismissed it. The second suit was begun by him in Clarke County, Washington. The defendant here resisted and the result was that the court denied his right to relief and entered a decree on her cross-complaint, allowing her $30 per month for separate maintenance. From the decree of the trial court the plaintiff here appealed and it was affirmed by the Supreme Court of that state. The case is reported in *Larson* v. *Larson,* 106 Wash. 305 (179 Pac. 841).

The third suit was instituted by him in this state but was dismissed. Only a few days after the rendition of the decree in the Superior Court of Clarke County, the plaintiff met the defendant on the street in Portland and, according to his story, asked her if she would come back and live with him, and she answered, "No, I won't live with you. I won't have anything to do with you." This is the foundation of the fourth and present of his suits, in which last one he prevailed.

1. It amply appears in evidence, however, that for more than a year prior to the date of that conversation the plaintiff himself had deserted the defendant, so that she then had a good cause of suit against him for the dissolution of the marriage contract.

2. The record of the Washington suit was introduced in evidence here, containing a recital of the evidence there introduced. It is contended on the part of the defendant as against that record, that it is inadmissible under the general issue as framed in this case and cannot be considered in evidence because it was not pleaded as an estoppel. It is true as a principle of law that if a party would rely upon a judgment or decree as an estoppel, or in other words as a means of closing his adversary's mouth to declare even the truth, the judicial determination relied upon must be pleaded with particularity. On the other hand, where the design is simply to show the relationship of the parties to each other and the history of their transactions with each other, this judicial record may be introduced like any other similar transaction between them. Blackstone sets down a judgment or decree as a contract of record. It is a memorial of the adjustment of the rights of the

parties which they themselves have constructed by legal procedure. No one will deny that an admission against one's own interest may be received in evidence against him, even though embodied in a contract to which he is a party. By analogy those proceedings are admissible in evidence in such a case as the one in hand, subject, of course, to contradiction and other evidence.

3. What, then, is the effect of the plaintiff's request and the defendant's refusal to live with him as his wife, said to have been made on April 21, 1918, in view of the additional circumstances disclosed by the testimony that he himself at that time had already deserted her for more than one year? In *Luper* v. *Luper*, 61 Or. 418, 427 (96 Pac. 1099, 1103), the court, speaking by Mr. Commissioner SLATER, on the subject of desertion, after stating that the deserted party cannot prevent the resumption of marital relations if the proffer of return is made in good faith within the year of desertion, goes on to say:

"But, when the desertion has continued through the statutory period, the deserted party may rely upon his acquired right and refuse to renew the cohabitation: 1 Bishop on Marriage, Divorce and Separation, § 1775. The reason appears to be that the innocent party has acquired a right, a cause of action, which he is not bound to, but may, surrender, and resume marital relations upon an agreement, express or implied, with the guilty one that she is acting in good faith and will not repeat the offense; and, upon the contrary being shown, the cause of action previously existing, but which was conditionally surrendered, will be revived."

It is said in 19 C. J. 66:

"An offer of reconciliation must be made in good faith, and not merely to lay a foundation for or to defeat an action for, divorce. It must be free from

improper qualifications and conditions, and must also be conciliatory in form and substance. An offer of reconciliation by a guilty spouse must be made before the expiration of the statutory period in order to deprive the innocent spouse of the right to a divorce.''

See also *Gordon* v. *Gordon,* 88 N. J. Eq. 436 (103 Atl. 33); *Benkert* v. *Benkert,* 32 Cal. 468; *Stoneburner* v. *Stoneburner,* 11 Idaho, 603 (83 Pac. 938); *Tipton* v. *Tipton,* 169 Iowa, 182 (151 N. W. 90, Ann. Cas. 1916C, 360); *Lundy* v. *Lundy,* 23 Ariz. 213, (202 Pac. 809).

4. The doctrine seems to be that until the lapse of the statutory year the party who has initiated the desertion has the right to repent, and if the offer to return is made in good faith, the adverse party cannot refuse to accept such an offer and resume marital relations without being guilty of a desertion on his own account, dating from the refusal. On the other hand, where the original deserter has continued his willful abandonment of his spouse for the year, the door of repentance is closed upon him and he cannot at will, without the consent of the other, turn the tables, so to speak, on that other and, by an offer which comes too late, initiate a new cause of suit in his own favor.

In addition to all this, the offer to return must be made in good faith. In the present instance, under all the circumstances disclosed by the evidence, the request of the plaintiff for his wife to return and live with him smacks too much of a mere desire to evade the payment to her of the maintenance awarded her by the decree of the Washington court. This disposition crops out in his own testimony quite apparently. It is not the law that in his own discretion he may desert his wife so long as to give her a cause of suit and then at his own good pleasure deprive her of

that cause without her consent. Desertion by her cannot be predicated upon such premises. The result is, that the decree of the Circuit Court must be reversed and the suit dismissed.

REVERSED AND SUIT DISMISSED.

McBRIDE, HARRIS and RAND, JJ., concur.