Argued December 10, 1941; affirmed January 27, 1942

# WINSTON BROS. CO. *v.* GALLOWAY ET AL.

(121 P. (2d) 457)

Before KELLY, Chief Justice, and RAND, BELT, ROSS-
MAN, BAILEY, LUSK and BRAND, Associate Justices.

*Howard P. Arnest,* of Portland, for appellant.

*Ralph R. Bailey*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and Carl E. Davidson, Assistant Attorney General, on the brief), for respondent.

BELT, J. This is an appeal from a decree of the circuit court sustaining the State Tax Commission in levying a tax on the net profits resulting, in 1935, from the performance by plaintiff of a contract with the United States government to construct and repair a certain part of the south jetty at the mouth of the Columbia river. Guy F. Atkinson Company, a Nevada corporation, was also a party to the contract, but this suit involves only the tax on profits earned by the plaintiff. The cause has been submitted under a stipulation of facts together with a map which, it is agreed, accurately reflects the ''geographical, geodetic and topographical'' conditions existing at the mouth of the river during the calendar year of 1935.

At the threshold of the case we are confronted with the contention that res judicata applies and that the State Tax Commission, by reason of *Winston Bros. Co. v. State Tax Commission*, 156 Or. 505, 62 P. (2d) 7 (application for writ of certiorari denied by the United States Supreme Court, 301 U. S. 689, 81 L. Ed. 1346, 57 S. C. 793), is estopped from asserting that it has the right to impose such tax. This case involved the validity of a tax on net profits made by plaintiff in 1934 under a similar contract with the federal government for construction and repair of the same jetty, the situs of the work being beyond low-water mark but within the territorial boundaries of the state. Otherwise stated, it is contended by appellant that the precise issue involved herein has been heretofore determined on the merits adversely to the State Tax Commission

in a proceeding between the same parties concerning the same issues. In the above case concerning the 1934 tax, it was adjudicated that the United States government had exclusive jurisdiction over the area in question and, by reason thereof, the State of Oregon had no authority to impose the tax.

■ It is well settled in this jurisdiction and elsewhere that a party relying upon res judicata or estoppel by judgment must plead and prove with particularity the facts justifying the application of such doctrine: *Larson v. Larson*, 103 Or. 393, 205 P. 540; *McCully v. Heaverne*, 82 Or. 650, 160 P. 1166, 162 P. 863; *Farmers & Fruit-growers' Bank v. Davis*, 93 Or. 655, 184 P. 275; *Jenkins v. Jenkins*, 119 Or. 292, 247 P. 145; 9 Ency. Pleading & Practice, 616; Freeman on Judgments (5 Ed.) § 798, citing numerous authorities. The reason for such strict rule of pleading is obvious, as the adversary of the party relying upon the doctrine is precluded from even asserting the truth. Res judicata may result in making black, white; or white, black. In the instant case, if res judicata applies, the decision rendered by this court in *Winston Bros. Company v. State Tax Commission*, supra, is conclusive even though erroneous.

■ While appellant in its brief relies upon res judicata as a bar to the imposition of the tax involved herein, the only allegations in the complaint with reference to the former judgment are:

"That notwithstanding the Supreme Court of Oregon, on November 5, 1936, in a case entitled Winston Bros. Company, et al, vs. State Tax Commission, 156 Or. 505, had directed a declaratory judgment to the effect that the provisions of the 'Corporation Excise Tax' law, Chapter XIII, Title LXIX, Oregon Code 1930, as amended, had no application and that the

State of Oregon and defendants in its behalf had no jurisdiction over the plaintiff or its earnings derived from a previous contract for similar work upon said South Jetty, * * * the defendants asserted claim against plaintiff and threatened to make an arbitrary assessment against it for alleged excise taxes for the year 1935, upon the earnings from said contract * * *.''

In the prayer of the complaint it is not demanded that defendants be estopped by the former judgment. The pleadings and judgment in the former proceeding are not attached to the complaint herein. Nor is there any averment that the precise issue involved in this case was determined on its merits adversely to defendants in the case involving the 1934 income tax. The above allegations fall far short of a plea of res judicata. We think the plaintiff did not intend them as such. In the stipulation of facts there is no reference to the former judgment. As to the requisites of such a plea, see Freeman on Judgments (5 Ed.) § 804; 34 C. J. 1059, and numerous cases cited in support of the text. The doctrine of res judicata is not to be confused with that of stare decisis as the two are based upon wholly different principles: 30 Am. Jur. 913.

Plaintiff is a foreign corporation with its principal office and place of business in the city of Minneapolis. The State Tax Commission asserts the right to impose this tax upon the net income of the plaintiff ''for the privilege of carrying on or doing business in this state.'' § 110-1502 (e) O. C. L. A. The constitutionality of the corporation excise tax act of this state (Ch. 427, Oregon Laws 1929; §§ 110-1501 to and including 110-1527, O. C. L. A.) has been upheld by this court as not being ''an unwarranted tax upon the functions of the federal government,'' (*General Construction Co. v. Fisher*, 149 Or. 84, 39 P. (2d) 358, 97 A. L. R. 1252) so

we need not be further concerned with that interesting and difficult question. Such conclusion was also reached by the United States Supreme Court—with four members thereof dissenting—in the comparatively recent case of *James v. Dravo Contracting Company*, 302 U. S. 134, 82 L. Ed. 155, 58 S. Ct. 208, 114 A. L. R. 318.

■ Logically, the first question to be determined is the situs of the work. Clearly, if the work under the contract was performed beyond the boundaries of the state no tax could be imposed upon the profits resulting from such work. If, however, the work was performed within the territorial boundaries of the state, the State, in the exercise of its sovereign power, had the right to impose the tax unless its jurisdiction for such purposes had been relinquished or surrendered.

We are convinced, by referring to the map showing the area at the mouth of the Columbia river and indicating the part of the jetty where the construction and repair work was performed, that the situs of the work, although beyond low-water mark, was within the territorial limits of the state of Oregon. The jetty extends out into the ocean, but the place where the work in question was performed is not beyond two nautical miles from the coast line and is definitely south of the north boundary of the state.

The principal contention of the appellant does not relate to the situs of the work. It is based upon the proposition that the federal government, in the exercise of its constitutional functions, as provided in Art. I, § 8, of the Constitution of the United States, acquired exclusive jurisdiction over the jetty and the land upon which it is constructed and that, by reason thereof, the State of Oregon has no authority to levy the tax.

██ It is well settled that title to the bed of a navigable stream, within the boundaries of a state, is vested in the State. Such title, however, is, among other things, subject to the paramount right of the United States government to construct a jetty thereon in aid of commerce and navigation. It was not necessary for the federal government to obtain the consent of the state to build the jetty. It does not follow, however, that, because the federal government had exclusive authority over the construction of the jetty and is the owner thereof, that the State of Oregon was ipso facto divested of its jurisdiction to levy a tax on the net profits of a corporation derived by carrying on such work: *Atkinson v. State Tax Commission*, on rehearing, 156 Or. 469, 67 P. (2d) 161, affirmed on appeal, 303 U. S. 20, 82 L. Ed. 621, 58 S. Ct. 419; *James v. Dravo Contracting Co.*, supra; *Silas Mason Co. v. Tax Commission*, 302 U. S. 186, 82 L. Ed. 187, 58 S. Ct. 233. The tax is not upon the federal government. It is based upon the right and privilege granted to the plaintiff to carry on business in this state.

In what way did the State relinquish its sovereign power to tax? As before stated, it was not by reason of the mere fact that the federal government, in the exercise of its plenary power to regulate commerce and navigation, was engaged in the construction and repair of the jetty. Neither was there a surrender of jurisdiction under the terms of any cession by the State to the federal government of the bed of the river beyond low-water mark. The State of Oregon, however, by legislative enactment (Ch. 33, § 1, Laws of Oregon for 1913—codified as § 106-705, O. C. L. A.) ceded to the United States exclusive jurisdiction over the military reservation of Fort Stevens, but specifically reserved the right to serve civil or criminal process thereon. The

legislature had, by a previous enactment in 1864, conveyed to the United States all the right and interest of the State of Oregon in and to the land in front of Fort Stevens, "subject to overflow, between high and low tide." (Special Laws of Oregon for 1864, p. 72.)

It is well at this juncture to state that the south jetty extends from Fort Stevens across tide lands and out into the Pacific ocean—a distance of six or seven miles. The rock used in the construction and repair of the jetty was quarried in the state of Washington and shipped by rail to plaintiff at Fort Stevens military reservation. It was then switched and hauled over a tramway out upon the jetty where it was dumped.

■ There is no material difference in the facts between this case and the one previously before this court (*Winston Bros. Co. v. State Tax Com.*, supra), involving a tax on the net profits resulting from performance of a contract with the federal government in 1934. The contracts concerned the same jetty and the situs of the work was below low-water mark but within the three-mile limit. It will be recalled that this court held that the State Tax Commission could impose no tax on profits derived in 1934 for the reason that exclusive jurisdiction over the area in which the work was performed was vested in the United States. Obviously, if we adhere to such decision, it is controlling in the instant case and the State Tax Commission can levy no tax on profits earned under the contracts in 1935.

*Atkinson v. State Tax Com.*, supra, involved the validity of an excise tax on the net profits earned by plaintiffs in performance of a contract with the United States to construct a dam across the Columbia river at Bonneville, Oregon—part of the structure being within the territorial limits of this state. On original

hearing it was held that the federal government had exclusive jurisdiction over the site of the Bonneville dam project in the state of Oregon and that the profits realized by plaintiffs therein from the performance of their contract were not subject to taxation by the State of Oregon. On rehearing this decision was reversed and the imposition of the tax by the State Tax Commission was sustained. Thus this court finds itself in the anomalous situation of having held that the State of Oregon had legislative jurisdiction over the bed of the Columbia river at Bonneville but not so at its mouth. This direct conflict of decisions may be attributed to the fact that, at the time the Winston Bros. Co. case was decided, the law was in a formative stage and it was, for this court, largely a matter of first impression. The statement of the law, however, was greatly clarified by the United States Supreme Court in the Atkinson and the Dravo Contracting Co. cases. The latter case, which is controlling relative to the question of jurisdiction, was decided after the decisions in the *Winston Bros. Co. v. State Tax Commission*, supra, and *Atkinson v. State Tax Commission*, supra, cases were rendered by this court. *James v. Dravo Contracting Co.*, supra, was the guiding light for the United States Supreme Court when the Atkinson case came on for hearing on appeal.

The decision in *Winston Bros. Company v. State Tax Com.*, supra, is correct as to the area within the military reservation and the land in front thereof to low-water mark, since the State relinquished to the federal government its jurisdiction thereover. The State, however, did not surrender its legislative jurisdiction over the bed of the river beyond low-water mark and the Winston case must, in the light of *Atkinson v. State Tax Com.*, supra, be overruled in so far as it holds that

the federal government had exclusive jurisdiction over the area embracing the situs of the work on the jetty. We think there need be no further statement of the law relative to this phase of the case, as it was clearly set forth in the Atkinson case on rehearing and was extensively quoted with approval by the United States Supreme Court in its per curiam opinion on appeal.

■ Appellant urges that in any event it is entitled to a revision of the tax by reason of the work performed within the military reservation and across the tide lands—which it is asserted "constituted the great percentage of the work." It was stipulated, however, that the "physical work of construction and repair of the jetty" was performed on that part thereof indicated on the map as being beyond low-water mark "except for the maintenance on the Fort Stevens Military Reservation by the corporations of an office, a machine shop, a material yard, round-house and blacksmith shop." It was further stipulated that the "work performed on the Fort Stevens Military Reservation consisted of administrative functions, processing materials, and reconditioning and repairing equipment."

The plaintiff, in its return to the State Tax Commission, for information purposes only, discloses that its share of the net income resulting from performance of the contract was $100,543.43. $15,547.05 of such amount was allocated to corporate activities in furtherance of the contract at its principal office and place of business in the city of Minneapolis. No allocation of the net profit was based upon any work performed within the military reservation or on the tide lands. The State Tax Commission, in making its assessment, accepted the allocation shown by plaintiff's return. The sum of $15,547.05—allocated to work outside the

state—was deducted from the total net income from operations, before computing the tax. Otherwise stated, the tax of $6,779.71 is 8% of $84,996.38. There is no pleading or proof affording a basis for making any different allocation than that shown by the plaintiff's corporate tax return. Indeed, the case was tried in the lower court on the theory that the State had no jurisdiction to impose any tax.

The decree sustaining the validity of the tax as assessed is affirmed.

RAND, J., dissents.