**Clyde Hilliard, Plaintiff-Appellee, v. Susanne Hilliard, Defendant-Appellant.**

**Gen. No. 47,871.**

First District, First Division.

April 25, 1960.

Healy, Newby, Barrett & Healy, of Chicago (James L. Fox, of counsel) for appellant.

Capelle H. Damrell, Arthur and Edward Goldblatt, and C. A. Caplow, of Chicago (C. A. Caplow and Arthur Goldblatt, of counsel) for appellee.

PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This appeal is from a decree for divorce obtained by the husband several years after a decree for separate maintenance had been granted his wife. The question presented is: may a spouse who has been guilty of desertion for more than one year, and whose sincere attempts thereafter to effect a reconciliation have been repulsed, obtain a divorce upon the theory that

the refusal of the other spouse to resume marital relations constitutes desertion?

The parties were married in 1931 and lived together until 1947. In October 1952, a separate maintenance decree was entered which found that the husband had wilfully deserted his wife in December 1947, that the desertion had continued without interruption for more than one year and that the wife was living separate and apart without her fault. In February, June, and November 1955, the husband made attempts, which the chancellor found to be honest and bona fide, to resume living with his wife. The wife spurned his offers to return. In 1957 the husband sued for divorce alleging that the wife was guilty of desertion because she had rejected his offers of reconciliation. The chancellor found that the wife had wrongfully refused to live with the husband, that she was thus guilty of deserting him and that her desertion had lasted for more than one year. A divorce was granted the husband in 1959.

Our courts have held that it is the duty of the one deserted to take back the deserter if the latter makes offers in good faith to return. However, an examination of these cases reveals that the offers to return were made before the expiration of the statutory period of desertion during which the deserted party's right to a divorce was accruing. Levy v. Levy, 388 Ill. 179; Hoffman v. Hoffman, 316 Ill. 204; Thomas v. Thomas, 152 Ill. 577; Albee v. Albee, 141 Ill. 550; Johnson v. Johnson, 125 Ill. 510; Coolidge v. Coolidge, 13 Ill.App. 2d 170; Garvy v. Garvy, 310 Ill. App. 169; Haley v. Haley, 209 Ill. App. 153; Silverstein v. Silverstein, 178 Ill. App. 145.

Although no Illinois court of review has directly decided the point involved here, in some cases it has been implied that if the offers to return are not made

until after the statutory desertion period has expired, the party deserted is under no duty to accept them. Albee v. Albee, supra; Van Dolman v. Van Dolman, 378 Ill. 98; Kirby v. Kirby, 157 Ill. App. 564. The court went further in Silverstein v. Silverstein, supra, (the statutory period for desertion at that time was two years) and, in a statement not necessary to the decision, said:

"Where the wife without a legal cause therefor wilfully deserts her husband, if the wilful desertion continues for the full time of two years or more without the wife returning, or in good faith offering to return and live with him as his wife, the husband is entitled to a divorce; and offers by her to return after the two years have expired, although made in good faith, would not be a bar to his right to a divorce, even if the offers by her were positively refused by the husband."

In the present case the separate maintenance decree of October 1952, established that the wife, as of that date, was living apart from her husband without her fault. This judicial determination of itself (apart from the finding in the decree, which we need not consider, that the husband's desertion was wilful and had dated from 1947) gave her grounds for divorce for reason of desertion, if the desertion persisted for a year after the entry of the decree. Van Dolman v. Van Dolman, supra. Ill. Rev. Stat. (1959), ch. 40, sec. 1. It continued for more than two years thereafter; it was not until February 1955, that the husband made his initial overture for the resumption of the marital relationship. By this time it was too late; the desertion, being for over one year, had ripened into the statutory ground for divorce. At this point the wife, as the aggrieved party, had the right to decide if she wanted to forgive the wrong she had suffered. Her refusal to accept her husband's belated offers of reconcilia-

tion, even though they were made in good faith, did not make her the deserter nor cure his desertion. While a deserted spouse must keep open the door for the possible return of a penitent deserter, it is not necessary that this be done forever.

The conclusion we have reached is supported by the courts of other states and by writers on the subject of domestic relations. Oertel v. Oertel, 92 N. J. Eq. 327, 112 A. 487; Darden v. Darden, 246 Ala. 525, 21 So.2d 549; Anders v. Anders, 153 Fla. 54, 13 So.2d 603, 604; Williams v. Williams, 33 Ariz. 367, 265 P. 87; Bohmert v. Bohmert, 241 N. Y. 446, 150 N. E. 511, 513; Larson v. Larson, 103 Ore. 393, 205 P. 540, 541; Stauffer v. Stauffer, 205 Mo. App. 515, 226 S. W. 40, 41; 1 Nelson, Divorce & Annulment (2d Ed.) ch. 4, sec. 4.29; 2 Schouler (6th Ed.) Marriage, Divorce, Separation and Domestic Relations, sec. 1624.

Some cogent reasons are advanced in support of the husband's thesis that a wife, who is being supported under a separation decree, should either accept a husband's proposals to resume married life or seek a divorce herself; or, if she fails to do either, he should be permitted to divorce her. The statutes, and the decisions interpreting them, of Arkansas and California are cited which authorize such procedure, which is described as "eminently reasonable, equitable and enlightened."

It is said to be unfair to allow a wife to retain indefinitely the unique status which a separate maintenance decree confers on her, while her husband, unable to free himself, is denied the advantages of marriage or the privileges of divorce. But it would also be unfair to compel a wife, who has kept her matrimonial vows, to either involuntarily condone her husband's misdeeds or be placed in the position of the guilty party and have divorce thrust upon her. It must be remembered that the husband's position is the

471

result of his own action, and to permit him to get a divorce would be permitting him to profit from his ·own wrong.

██ ██ Whether the prolonged separation of husband and wife under a separate maintenance decree is sociologically desirable is a problem for legislative determination, and the problem has been before our legislature many times. In 1935 a measure was enacted which provided that if there were no living children born to the marriage ". . . the time during which the husband or wife is living apart and separate from the other spouse, under a decree for separate maintenance, shall be for the purpose of divorce, regarded as desertion by the husband or wife." In a four to three decision, the statute was declared unconstitutional because it did not have a reasonable basis for classification and because it, in effect, amended the Divorce Act. DeMotte v. DeMotte, 364 Ill. 421. There is no similar provision in our present divorce statute. Jurisdiction to grant a divorce is wholly statutory. Morrow v. Morrow, 15 Ill.App.2d 109. We have no power under the statute to approve a divorce upon the thesis urged by the husband in this case. If the divorce or separate maintenance statutes are regarded as inadequate or inequitable they can be corrected only by the legislature and not by judicial pronouncement.

One of the remaining points made by the husband is that an injunction, embraced in the separate mainte÷ nance decree, deterred him from making approaches for a reconciliation, and that the failure of his wife to dissolve the injunction evidenced her desire for a permanent separation. The husband was ". . . enjoined from disturbing, annoying, molesting or in any way bothering . . ." the wife. Suggestions of rapprochement could have been made at any time without violating this injunction. The same order was in effect during 1955; it did not then stop him from mak-

ing known his willingness to return, and it would not have prevented him from doing likewise within the year following the decree.

The decree ordered the husband to pay the wife's attorneys the sum of $600 for legal services in the divorce case and for the balance of fees still due them under the previous separate maintenance decree. Her attorneys received $50 on account, giving rise to the contention that the wife, having accepted benefits under the divorce decree, cannot now attack that decree. The balance owed under the first decree was apparently $131.50. We would assume that the $50 payment was applied to the old debt rather than to the new obligation. Until such time as the fees due from the earlier case have been paid, neither the attorneys nor the wife can be said to have benefited from any payment made under the divorce decree.

The judgment of the Circuit Court is reversed.

Reversed.

SCHWARTZ and McCORMICK, JJ., concur.