2 Ill. App.3d 1054 (1971)
278 N.E.2d 122
CLANTON REESE, Plaintiff-Appellant,
v.
DOROTHY M. REESE, Defendant-Appellee.
No. 55610.
Illinois Appellate Court  First District.
November 17, 1971.
*1055 William T. Davies, of Elgin, for appellant.
Amiel G. Hall, of Chicago, for appellee.
Judgment affirmed.
Mr. JUSTICE DIERINGER delivered the opinion of the court:
The plaintiff, Clanton Reese, filed a suit for divorce and the defendant, Dorothy Reese, filed a countersuit for separate maintenance. On May 2, 1967, a decree of separate maintenance was granted to Dorothy Reese, and since the entry of the decree the plaintiff and defendant have lived apart.
On March 23, 1970, Clanton Reese filed a petition to set aside the decree of separate maintenance or, in the alternative, to grant a divorce to either party, and on September 25, 1970, the petition was denied. The plaintiff appeals from that ruling. It is his contention he is being deprived of his right to life, liberty and the pursuit of happiness by a statute that is vague and indefinite; that he has been deprived of life, liberty and property without due process of law, has been a victim of involuntary servitude, and further maintains the uncertainty of such a decree amounts to cruel and inhuman punishment, all in violation of the United States Constitution Amendments 5, 8, 13, and 14, and the 1870 Illinois Constitution, Article II, Bill of Rights Numbers 1 and 2.
The plaintiff argues the intent of the Separate Maintenance Statute (Ill. Rev. Stat. 1967, ch. 68, par. 22) is solely to preserve the marital relation and to hold the way open for marital reconciliation. He suggests since he has lived apart from his wife for four years, there is no hope of reconciliation, and the purposes of the statute are not being served. His conclusion is that failure to have a time limit on a separate maintenance agreement renders the statute vague and uncertain and deprives him of his constitutional rights.
 1-3 However, while one of the purposes of the statute is to prevent a hasty divorce, another purpose is to provide for the support of a spouse who is not at fault and who does not choose to sue for divorce. (Schneider v. Schneider (1941), 312 Ill. App. 59.) As regrettable as this situation may be for the plaintiff, the State has an interest in maintaining the integrity and permanency of the marriage relation and has chosen to limit the reasons for which a divorce may be granted. That a state may do so is well established. A Nevada court summed up the historical development of legislative control of divorce in Worthington v. District Court (1914), 37 Nev. 212, as follows:
"As divorce is not among the inalienable rights of man or the ones granted by Magna Charta, the federal or state constitutions or the common law, and except at the will and subject to any restrictions imposed by the legislature, has never been recognized as one of the *1056 guaranteed privileges of the citizen, and as marriage is the most important of the domestic relations, and of highest concern to the state, it follows that the right to have the bonds of matrimony dissolved is limited to the causes and subject to the requirement prescribed by the statute. * * * Questions relating to the policy, wisdom, and expediency of the law are for the people's representatives in the legislature assembled, and not for the courts to determine. It is the duty of the courts to interpret and enforce the statute in accordance with the intention of the law making body, unless it is clearly in conflict with some provisions of the organic law."
People ex rel. Christiansen v. Connell (1954), 2 Ill.2d 332, contains language similar to the Nevada case, but also states:
"This, however, does not mean that because the origin of the right or privilege is legislative there are no constitutional restrictions on the type of legislation which may be enacted regulating the exercise of the right. Once the matter has been committed to the judiciary, the parties to such judicial proceedings are clearly entitled to the same constitutional safeguards as are parties to other proceedings. The fact that the legislature might entirely abolish the right of access to the courts for purposes of divorce and annulment does not imply the power to make the exercise of those rights conditional upon a surrender of constitutional guarantees. * * * The Supreme Court of the United States has frequently announced the rule that a state may not attach unconstitutional conditions to the exercise of a right even though the right itself exists entirely at the pleasure of the State."
 4 The Separate Maintenance Statute, however, is not a restriction or condition of the right of access to divorce since it may only be used by the party who is without fault, and in no way precludes the innocent party from seeking a divorce.
 5,6 Therefore, since it has been frequently held there is a presumption in favor of the constitutionality of a legislative enactment (Davies Warehouse Co. v. Bowles, 321 U.S. 144; Chicago v. Ames (1937), 365 Ill. 529) to uphold the constitutionality of the Separate Maintenance Statute, it is sufficient to say it is not unreasonable in the light of legislative objectives and is within the province of legislative power. (People ex rel. Doty v. Connell (1956), 9 Ill.2d 390.) We find the plaintiff's constitutional rights have not been violated.
 7 Whether or not divorce or separate maintenance statutes are inadequate or inequitable, they can be corrected only by the legislature and not by judicial pronouncement. In Hilliard v. Hilliard (1960), 25 Ill. App.2d 468, the court faced a fact situation similar to the one at bar. In that case the court noted:

*1057 "Some cogent reasons are advanced in support of the husband's thesis that a wife, who is being supported under a separation decree, should neither accept a husband's proposals to resume married life or seek a divorce herself; or, if she fails to do either, he should be permitted to divorce her. * * * It is said to be unfair to allow a wife to retain indefinitely the unique status which a separate maintenance decree confers on her, while her husband, unable to free himself, is denied the advantages of marriage or the privileges of divorce. But it would also be unfair to compel a wife, who has kept her matrimonial vows, to either involuntarily condone her husband's misdeeds or be placed in the position of the guilty party and have divorce thrust upon her. * * * Whether the prolonged separation of husband and wife under a separate maintenance decree is sociologically desirable is a problem for legislative determination, and the problem has been before our legislature many times. * * * We have no power under the statute to approve a divorce upon the thesis urged by the husband in this case. If the divorce or separate maintenance statutes are regarded as inadequate or inequitable they can be corrected only by the legislature and not by judicial pronouncement."
For these reasons, the judgment of the circuit court of Cook County is affirmed.
Judgment affirmed.
ADESKO, P.J., and BURMAN, J., concur.